R3M LAW, LLP
437 Madison Avenue, 24th Floor
New York, NY 10017
646.453.7851
Howard P. Magaliff
Taylor M. Haga

*Attorneys for Jodie Philipsen and Janice Seymour,*
*on behalf of themselves and all other similarly situated*
*Australian Mesh Claimants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| ENDO INTERNATIONAL plc, *et al.*, | Case No. 22-22549 (DSJ) (Jointly Administered) |
| Debtors.[1] | |
| JODIE PHILIPSEN and JANICE SEYMOUR, on Behalf of Themselves and All Other Similarly Situated Australian Mesh Claimants, | Adv. Pro. No. 26-7068 |
| Plaintiffs, | |
| – against – | |
| HEATHER BARLOW, as Trustee for the Mesh Trust, | |
| Defendant. | |

**MOTION OF JODIE PHILIPSEN AND JANICE SEYMOUR FOR A PRELIMINARY INJUNCTION, FOR ENTRY OF AN ORDER SCHEDULING A HEARING, AND FOR A TRO ON NOTICE PENDING THE HEARING**

[1] The last four digits of Debtor Endo International plc's tax identification number are 3755. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided here. A complete list of this information may be obtained on the website of the Debtors' claims and noticing agent at *https://restructuring.ra.kroll.com/Endo*. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

TO THE HON. DAVID S. JONES,
UNITED STATES BANKRUPTCY JUDGE:

Jodie Philipsen ("Ms. Philipsen") and Janice Seymour ("Ms. Seymour" and, together with Ms. Philipsen, the "Plaintiffs"), on behalf of themselves and all other similarly situated Australian Mesh Claimants,[2] by their attorneys R3M Law, LLP, respectfully submit this motion (the "Motion") for an order, (i) pursuant to rule 65(a) of the Federal Rules of Civil Procedure (the "Rules"), rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and section 105(a) of the Bankruptcy Code, for a preliminary injunction, enjoining the Mesh Trustee from making any distribution to the holders of allowed Eligible Mesh Claims pending resolution of the above-captioned adversary proceeding, (ii) pursuant to Rule 65(b), for a temporary restraining order ("TRO") pending the hearing on the preliminary injunction, and (iii) pursuant to Bankruptcy Rule 9007, for entry of an order scheduling a hearing, and state:

## PRELIMINARY STATEMENT

1. The more than 6,000 Australian Mesh Claimants are by far the largest group of Mesh Claimants in this case. Through their counsel, they were actively involved in the negotiation of the Mesh Trust Agreement with counsel for the Committee. Because the class action procedure in Australia differs in key ways from the U.S. system, the Australian Mesh Claimants went to great lengths to ensure that the Mesh Trust Agreement contained requirements for the submission, review and allowance of claims that they could meet and that would not prejudice their ability to have their claims assessed on an equal footing with domestic mesh claims.

2. Unfortunately, in the most prejudicial example of elevating form over substance, the Mesh Trustee has summarily disallowed every single Australian Mesh Claim because

[2] Capitalized terms are defined in this Motion, the Plan or the Mesh Trust Agreement, as applicable.

the Australian Mesh Claimants did not submit HIPAA Releases with their claims. This is so notwithstanding that: (i) the Scheduled Claims Process for Mesh Claims, which is Exhibit 1 to the Mesh Trust Agreement, *see* ECF doc. 4213, Ex. 1-C (the "Mesh Claims Process"), only requires that claimants submit a HIPAA Release "if applicable," (ii) HIPAA does not apply extraterritorially to the medical records of the Australian Mesh Claimants, and (iii) the Australian Mesh Claimants have already provided all available medical records pursuant to Australian law, obviating the need for a HIPAA Release in the first place.

3. On June 2, 2026, Plaintiffs filed a complaint pursuant to Bankruptcy Rule 7001(9) for a declaratory judgment that HIPAA does not apply to the Australian Mesh Claims, and that the Mesh Trustee's disallowance of those claims for failure to provide HIPAA Releases should be declared null and void, and for a judgment permanently enjoining the Mesh Trustee from making any distribution to the holders of allowed Eligible Mesh Claims that do not include Australian Mesh Claims that have been allowed without consideration of HIPAA Releases. A copy of the complaint is attached as Exhibit 1.

4. Under the Plan, Mesh Claims are a subset of the Distribution Sub-Trust Claims, Plan, § 1.1.103, and the Mesh Trust is a Distribution Sub-Trust. *Id.*, § 1.1.106. Distribution Sub-Trust Claims are a subset of GUC Trust Channeled Claims. *Id.*, § 1.1.228. Under the Plan, there are several sources of funds available to pay GUC Trust Channeled Claims including Mesh Claims: (i) $60 million of GUC Trust Cash Consideration, (ii) GUC Subscription Rights, and (iii) GUC Trust Litigation Consideration. *Id.*, § 1.1.231.

5. The largest potential source of funds to pay GUC Trust Channeled Claims including Mesh Claims is the GUC Trust Insurance Policies, which are defined to include "any known or unknown insurance policies that do or may provide coverage to the Debtors for

(a) GUC Trust Channeled Claims; …" *Id.*, § 1.1.237. The Australian Mesh Claimants have sought on multiple occasions to learn whether there will be available proceeds under the GUC Trust Insurance Policies to pay Mesh Claims, and the amount of insurance. To date there has been no response. Without knowing the extent of insurance that will be the primary source of funds for distributions to Mesh Claimants, and in the absence of preliminary and immediate injunctive relief, there is a risk that the Mesh Trustee could distribute all of the funds to other Mesh Claimants without any reserve, leaving the Australian Mesh Claimants without any source of recovery if the Court enters a declaratory judgment in Plaintiffs' favor. While the Australian Mesh Claimants understand that the availability of money damages is normally a reason to deny injunctive relief, in extraordinary circumstances injunctive relief is appropriate. This is one of those cases: there can be no money damages if all of the money has been paid to other claimants.[3] Thus, without an injunction the Australian Mesh Claimants will suffer irreparable harm.[4]

## **FACTS**

### I. **The Class Action in Australia**

6. On January 16, 2018, Ms. Philipsen commenced a representative proceeding in the Federal Court of Australia (the "Class Action"), on behalf of herself and other women who suffered from complications caused by vaginal mesh implants designed and made by American Medical Systems, LLC ("AMS"), a predecessor in interest to Astora Women's Health, LLC

[3] The need for injunctive relief is particularly acute because even in the best case, where all of the Australian Mesh Claims are allowed and the maximum available coverage under the GUC Trust Insurance Policies is paid, the funds available for distribution will be allocated between the 6,000 or so Australian Mesh Claims totaling more than US $330 million and the other Mesh Claims. Thus, the Australian Mesh Claimants stand to recover at most only a fraction of their claims if they are successful in this litigation.

[4] The Australian Mesh Claimants take no position in this Motion about whether there are other grounds for the Mesh Trustee to challenge their claims on the merits or for another reason, only that the failure to deliver HIPAA Releases should not.

("Astora"). On July 31, 2018, Ms. Seymour was joined to the Class Action as the second lead applicant (together with Ms. Philipsen, the "Class Action Lead Plaintiffs")

7. On March 1, 2021, the Class Action Lead Plaintiffs substituted Astora for AMS as respondent in the Class Action after being informed by AMS's solicitors that (a) AMS's liabilities had been transferred to Astora before the commencement of the Class Action, (b) the entity AMS was dissolved in June 2018, and (c) Astora should be substituted as respondent in the Class Action.

## II. Astora's Bankruptcy

8. On August 16, 2022, Endo International plc and its subsidiaries (collectively, the "Debtors"), including Astora, filed voluntary petitions for relief under chapter 11 of Bankruptcy Code in this Court (the "Bankruptcy Case"). On October 26, 2022, the Federal Court of Australia recognized the Bankruptcy Case and stayed the Class Action proceeding.

9. On June 1, 2023, the Lead Plaintiffs, on behalf of themselves and the Australian Mesh Claimants, filed the *Motion of Jodie Philipsen and Janice Seymour for an Order (I) Certifying the Class Australian Mesh Claimants and Authorizing the Filing of a Class Proof of Claim, or Alternatively, (II) Extending the Bar Date to File Proofs of Claim* [ECF doc. 2138] (the "Motion for Class Certification") in the Bankruptcy Case, which received objections from the Official Committee of Opioid Claimants [ECF doc. 2226], the Official Committee of Unsecured Creditors (the "Committee") [ECF doc. 2227], and the Debtors [ECF doc. 2228]. Following extensive negotiations, the Motion for Class Certification was resolved pursuant to the *Stipulation By and Among Jodie Philipsen and Janice Seymour, the Official Committee of Unsecured Creditors, the Official Committee of Opioid Claimants, and the Debtors Resolving the Class Claim Motion* [ECF doc. 2242], filed on June 21, 2023 (the "Claims Stipulation"), which

provided, among other things, that counsel to the Australian Mesh Claimants may file a single "consolidated" proof of claim on behalf of all their clients.

10. On March 22, 2024, the Court entered *the Findings of Fact, Conclusions of Law, and Order (I) Confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International plc and its Affiliated Debtors and (II) Approving the Disclosure Statement with Respect Thereto* [ECF doc. 3960] (the "Confirmation Order"), confirming the *Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International plc and its Affiliated Debtors* [ECF doc. 3849] (as amended and supplemented, and as confirmed by the Bankruptcy Court, the "Plan").

11. The Mesh Claims Trust was established on April 23, 2024 pursuant to Section 6.3 of the Plan and that certain *Endo Mesh Trust Agreement* (*see* ECF doc. 4213, Ex. 1-C) (the "Mesh Trust Agreement"), entered into between Heather Barlow, as the Trustee for the Mesh Claims Trust (the "Mesh Trustee"), and U.S. Bank Trust National Association, as the Delaware Trustee for the Mesh Claims Trust. The terms of the Mesh Trust Agreement and the administration of the Mesh Claims Trust were negotiated among the Committee, the Australian Mesh Claimants, and several other parties in interest, and were ultimately approved by this Court. The Mesh Claims Trust was established as one of the Distribution Sub-Trusts pursuant to the terms of the Plan, the Confirmation Order, the GUC Trust Agreement, and the Mesh Trust Agreement, and provides for distribution of the Mesh Claims Trust Consideration to holders of Eligible Mesh Claims that become Allowed after the Effective Date. Pursuant to the Mesh Trust Agreement, the Mesh Trustee "is to use its assets and income to resolve and make distributions on account of all Eligible Mesh Claims and shall (i) hold, manage, and invest all funds and other assets received by the Mesh Trust from the GUC Trust for the benefit of the beneficiaries of the

Mesh Trust; and (ii) administer, process, resolve, and liquidate all Allowed Eligible Mesh Claims in accordance with th[e] Mesh Trust Agreement[.]" Mesh Trust Agreement, preamble.

## III. The Mesh Trust Agreement

12. The Mesh Trust Agreement sets forth the Mesh Claims Process, by which all mesh claims are to be resolved, and provides, in pertinent part: "To establish an Allowed Mesh Claim in accordance with this Mesh Claims Process, an Eligible Mesh Claimant must satisfy all of the following criteria:

> 3.2.1 Meet the [Scheduled Value and Medical/Exposure Criteria];
>
> 3.2.2 Complete, sign and submit the Trust Submission Form;
>
> 3.2.3 Complete, sign and submit the HIPAA Release, **if applicable**;[5] and
>
> 3.2.4 If the Eligible Mesh Claim concerns the injuries of a decedent, execute and submit the Heirship Declaration."

Mesh Trust Agreement, Ex. 1 § 3.2 (emphasis added).

13. Section 4.21(f) of the Mesh Trust Agreement provides: "The Mesh Trust may request a Mesh Claimant to execute a HIPAA Release **to enable the Mesh Trust to directly obtain the Mesh Claimant's medical records for evaluation** in accordance with this Mesh Trust Agreement." Mesh Trust Agreement, § 4.21(f) (emphasis added).

---

[5] Counsel for the Australian Mesh Claimants in both the United States (R3M Law) and Australia (Shine Lawyers) were provided with drafts of the Mesh Trust Agreement and Mesh Claims Process by counsel for the Committee for review and comment before they were finalized. On April 17, 2024, R3M sent comments to Kramer Levin, and added the words "if applicable" in section 3.2.3 specifically because we were not certain at the time if HIPAA applied to foreign claimants. R3M wanted to make sure that the Australian Mesh Claimants would not be prejudiced by having their claims disallowed if they did not provide HIPAA Releases. On April 17, 2024 counsel for the Committee sent back revised documents accepting this change, which is included in the final, approved Mesh Claims Process. Nonetheless, the Mesh Trustee ignored this language and disallowed all of the Australian Mesh Claims on this basis, even after we explained that HIPAA does not apply and that all available medical records had already been submitted.

## IV. The Consolidated Claim and Related Notice of Deficiency

14. On September 2, 2024, in accordance with the terms of the Claims Stipulation, the Australian Mesh Claimants timely submitted their consolidated proof of claim (the "Consolidated Claim") and a spreadsheet containing: (i) the name of each claimant subject to the Consolidated Claim, (ii) the asserted claim amount associated with each individual claim, and (iii) all information in the possession of the Australian Mesh Claimants relating to each of the individual claims. Additional supporting documents were submitted on October 7 and 9, 2024. The Australian Mesh Claimants have submitted all available and relevant medical records for each of the Australian Mesh Claimants (the "Medical Records"). *See* Declaration of Simon Morrison ("Morrison Decl.") attached as Exhibit 2, ¶ 35. The Medical Records were maintained and, thus, obtained solely outside the United States. The Consolidated Claim did not include a HIPAA Release for each of the approximately 6,000 Australian Mesh Claimants.

15. On February 11, 2025, Kroll advised counsel for the Australian Mesh Claimants of certain deficiencies with the information contained in the Consolidated Claim spreadsheet, including that each claimant had failed to provide a HIPAA Release. Pursuant to section 4.1(e) of the Mesh Trust Agreement, the Australian Mesh Claimants had 30 days to correct the deficiencies. On March 20, 2025, counsel for the Australian Mesh Claimants submitted a revised spreadsheet to Kroll and additional Medical Records to support the claims. There were no HIPAA Releases because they were inapplicable.

16. Simultaneously with the deficiency notice from Kroll, on February 11, 2025, counsel for the Mesh Trustee sent a letter to the Australian Mesh Claimants' attorney stating, among other things, that the Consolidated Claim was deficient for failing to include a HIPAA Release for each of the Australian Mesh Claimants and, accordingly, all claims of the

Australian Mesh Claimants would be summarily disallowed. This letter did not reference the 30-day cure period. A copy of the letter is attached as Exhibit 3. Counsel for the Australian Mesh Claimants responded to the Mesh Trustee's attorney on February 17, 2025, objecting to the disallowance of the claims before the 30-day cure period expired. A copy of the letter is attached as Exhibit 4.

17. On March 19, the following email exchange ensued between counsel for the parties:

> R3M to Robinson + Cole:
>
> We had a productive discussion with Justin Hughes at Stretto, and have addressed all of the noted deficiencies in Stretto's chart, but there is one clarification. We did not supply HIPPA forms for the Australian claimants because they are not subject to it and have no idea even what HIPPA is. If this is something that Heather thinks is nonetheless mandatory for some reason, then I'd like to discuss. It is not possible to get thousands of these forms signed by tomorrow. This is one of the reasons I wrote to you several weeks ago asking to speak about the deficiencies, which you declined to do at the time.
>
> Robinson + Cole to R3M:
>
> [T]he Trust has been very clear throughout that each and every document subject to a deficiency notice must be submitted by the deadline of March 20, 2025. Without a completed HIPPA form, the claims will be considered deficient and will be disallowed. We do not believe a dialogue on this will be productive.
>
> R3M to Robinson + Cole:
>
> Further to my email yesterday, there is no Australian equivalent to the HIPAA form. Healthcare providers will typically require an authority signed by the patient if someone (*e.g.* their lawyer) wants to obtain their medical records. Under the *Privacy Act 1988* (the Act), organizations to whom the Act applies (*e.g.* Shine) are permitted to collect, use and disclose personal information with the individual's consent or where a "*permitted general situation exists"* (see the Act, Schedule 1, APP 6.2(c)). A permitted general situation includes where the use or disclosure is "*Reasonably*

> *necessary for establishing, exercising or defending a legal or equitable claim*" (§ 16A of the Act). This has already been done. It is how Shine was able to send records in the first place to establish the claims.
>
> We understand the Trust's position, but this is literally elevating the form over substance. HIPAA is simply inapplicable. The Trust has all of the records we have obtained and the authority to look at them. The claimants should not be penalized for the failure to deliver the form.

A copy of this email exchange is attached as Exhibit 5.

18. Nonetheless, on May 1, 2026, in response to the Australian Mesh Claimants' counsel seeking the status of his clients' claims, the Mesh Trustee indicated that, though she would not be providing "individualized notice of disallowance[,]" all of the Australian Mesh Claimants' claims were disallowed at least because no HIPAA Release was provided:

> [T]he Trust has repeatedly advised you that absence submission of a properly completed HIPPA form, claims would be considered deficient and would be disallowed. Because the Trust is not required to provide notice of disallowance and to avoid depletion of the limited funds available for compensation of claimants, the Trust does not intend to provide individualized notice of disallowance. However, as you are aware, no claimant represented by your firm complied with all of the requirements of the Claims Submission Procedures.

A copy of this email is attached as Exhibit 6.

19. By this Motion, Plaintiffs seek a preliminary injunction, enjoining the Mesh Trustee from making any distribution to the holders of allowed Eligible Mesh Claims pending resolution of the complaint, and a temporary restraining order pending the hearing on the preliminary injunction.

## ARGUMENT

### A. The Standard for Preliminary Injunctive Relief

20. Rule 65(a) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7065, authorizes the Court to issue a preliminary injunction pending a trial on the merits of the underlying action. Rule 65(b) authorizes the Court to issue a temporary restraining order (TRO) until the preliminary injunction motion is heard. Pursuant to section 105(a) of the Bankruptcy Code, "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" title 11.

21. The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held." *Benisek v. Lamone*, 585 U.S. 155, 161 (2018) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Hanson Tr. PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985). "The purpose of a TRO is to preserve the status quo until the court can address the merits of a preliminary injunction." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009).

22. It is well established that "the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88 (1974). "In the Second Circuit, the standard for issuance of a temporary restraining order is the same as the standard for a preliminary injunction." *Antonyuk v. Hochul*, 635 F. Supp.3d 111, 124-25 (N.D.N.Y. 2022) (Suddaby, J.) (citing cases).

23. A party seeking a preliminary injunction must establish "(1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the

hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quoting *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)) (internal quotation marks omitted).

**B. <u>Plaintiffs Are Entitled to Injunctive Relief</u>**

**i. <u>Irreparable Harm</u>**

24. Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P*.C., 120 F.4th 59, 80 (2d Cir. 2024) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). To establish irreparable harm, "the moving party 'must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.'" State Farm, 120 F.4th at 80 (alteration in original) (quoting *Faiveley Transp. Malmo AB*, 559 F.3d at 118). Absent "extraordinary circumstances," injunctions are also unavailable "[w]here there is an adequate remedy at law, such as an award of money damages." Id. (quoting *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005)).

25. Here, there are extraordinary circumstances. Absent preliminary injunctive relief, Plaintiffs will lose their chance to recover for the substantial physical and emotional harm caused by the vaginal mesh devices implanted in them if distributions of all available funds are made by the Mesh Trustee. The Mesh Trust was established to compensate women who suffered from severe complications caused by vaginal mesh implants designed and made by AMS, and the approximately 6,000 Australian Mesh Claimants represent the vast majority of such women. If the funds available to compensate such claimants are distributed by the Mesh

Trustee before the Court's determination of the adversary proceeding, there will be no money left for the 6,000 Australian Mesh Claimants, nor a way to claw those distributions back.

26. The Australian Mesh Claimants have been unable to learn whether there will be available insurance proceeds to pay Mesh Claims, and the amount of insurance, despite multiple requests. Accordingly, in the absence of preliminary and immediate injunctive relief, there is a risk that the Mesh Trustee will distribute all of the funds to other Mesh Claimants without any reserve, leaving the Australian Mesh Claimants without any recovery if the Court enters a declaratory judgment in Plaintiffs' favor. In this case, there can be no money damages if all of the money has been paid to other claimants. The injury is one that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if the Court waits until the end of trial to decide if injunctive relief is warranted. Thus, the Australian Mesh Claimants have shown they will suffer irreparable harm.

**ii. <u>Likelihood of Success on the Merits</u>**

27. Plaintiffs are likely to succeed on the merits. "To make a showing of a 'likelihood of success,' a plaintiff must convince the Court that it is more likely than not – or 'the probability of prevailing is better than fifty percent' – that it will succeed on its claims." *Serrano v. Lopez*, 2014 U.S. Dist. LEXIS 85296, *16 (S.D.N.Y. June 18, 2014) (quoting *Greenlight Capital, L.P. v. Apple, Inc.*, No. 13-976, 2013 U.S. Dist. LEXIS 24716, 2013 WL 646547, at *4 (S.D.N.Y. Feb. 22, 2013).

28. Plaintiffs seek a declaratory judgment that, under the Mesh Trust Agreement, (i) the requirement of a HIPAA Release is not applicable to the Australian Mesh Claimants, and (ii) the Mesh Trustee's disallowance of any of the Australian Mesh Claimants' claims on the basis that a HIPAA Release was not provided is null and void, and of no effect.

**a. The Mesh Trust Agreement Provides that a HIPAA Release is Required Only "If Applicable."**

29. The criteria set forth in the Mesh Trust Agreement for establishing an Allowed Mesh Claim expressly provide that a HIPAA Release need only be submitted "if applicable." *See* Mesh Trust Agreement, Ex. 1 § 3.2. Accordingly, under section 3.2.3, if a HIPAA Release is not applicable, a claimant need not provide one to establish an Allowed Mesh Claim and disallowance for failure to provide one is improper. *Id.*, § 3.2.3.

30. Although a separate section of the Mesh Trust Agreement provides that "the Trust Submission Form shall include [] a HIPAA release form" (Mesh Trust Agreement, § 4.1(b) (emphasis added)), this inconsistent language should not override the clear language of section 3.2.3 of the Mesh Claims Process, *i.e.*, that a HIPAA release need only be provided "if applicable." *See In re Aéropostale, Inc.*, 555 B.R. 369, 400 (Bankr. S.D.N.Y. 2016) ("[S]pecific clauses of a contract are to be read consistently with the over-all manifest purpose of the parties' agreement. Contracts are also to be interpreted to avoid inconsistencies and to give meaning to all of its terms.") (internal citation omitted). The Mesh Trustee should not be permitted to rely on the inconsistent language in section 4.1(b) of the Mesh Trust Agreement given that section also provides that the Trust Submission Form "shall include" an "heirship declaration(s)" (Mesh Trust Agreement, § 4.1(b) (emphasis added)), yet, the Mesh Trustee has not sought to disallow claims for failure to provide an heirship declaration. The Mesh Trustee cannot cherry pick which provisions apply and which do not.

**b. A HIPAA Release is Inapplicable to the Australian Mesh Claimants**

31. A HIPAA Release is inapplicable with respect to the Australian Mesh Claimants because their medical records are maintained solely outside the United States and HIPAA does not apply extraterritorially.

#### i. *The Purpose of HIPAA is to Protect and Regulate the Disclosure of Protected Health Information in the United States.*

32. The purpose of HIPAA is to protect and regulate the disclosure of protected health information in the United States. *See* Summary of the HIPAA Privacy Rules, Introduction (available at *https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html*). According to the U.S. Department of Health and Human Services, the agency charged with administering HIPAA, HIPAA, and the Privacy Rules issued thereunder, establish "a set of *national* standards for the protection of certain health information" and address "the use and disclosure of individuals' health information – called 'protected health information' by organizations subject to" HIPAA. *Id.* (emphasis added). HIPAA applies to, *i.e.*, imposes privacy and disclosure obligations on, "covered entities" and their "business associates." *See* 42 U.S.C. § 1320d *et seq.*; *see also* Covered Entities and Business Associates (available at *https://www.hhs.gov/hipaa/for-professionals/covered-entities/index.html*) ("The HIPAA Rules apply to covered entities and business associates. Individuals, organizations, and agencies that meet the definition of a covered entity under HIPAA must comply with the Rules' requirements to protect the privacy and security of health information and must provide individuals with certain rights with respect to their health information. … If an entity does not meet the definition of a covered entity or business associate, it does not have to comply with the HIPAA Rules.").[6] The Privacy Rules provide, in pertinent part, that "[a] covered entity or business associate may

---

[6] *See* 45 C.F.R. § 164.103 ("Covered entity means: (1) A health plan. (2) A health care clearinghouse. (3) A health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter."; "Business associate includes: (i) A Health Information Organization, E-prescribing Gateway, or other person that provides data transmission services with respect to protected health information to a covered entity and that requires access on a routine basis to such protected health information. (ii) A person that offers a personal health record to one or more individuals on behalf of a covered entity. (iii) A subcontractor that creates, receives, maintains, or transmits protected health information on behalf of the business associate.").

not use or disclose protected health information, except as permitted or required by this subpart or by subpart C of part 160 of this subchapter." 45 C.F.R. § 164.502. Accordingly, under HIPAA, entities subject to HIPAA may not disclose protected health information absent specific authorization (*e.g.*, a HIPAA release). *See id*.

**ii. *HIPAA Does Not Apply Extraterritorially*.**

33. Absent clear indication of extraterritorial application, a federal statute, like HIPAA, does not apply outside the United States. This was made clear by the Supreme Court of the United States in *Morrison v. National Australia Bank Ltd*., 561 U.S. 247 (2010):

> It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States. This principle represents a canon of construction, or a presumption about a statute's meaning, rather than a limit upon Congress's power to legislate. It rests on the perception that Congress ordinarily legislates with respect to domestic, not foreign matters. Thus, unless there is the affirmative intention of the Congress clearly expressed to give a statute extraterritorial effect, we must presume it is primarily concerned with domestic conditions. The canon or presumption applies regardless of whether there is a risk of conflict between the American statute and a foreign law. When a statute gives no clear indication of an extraterritorial application, it has none. … [W]e apply the presumption in all cases, preserving a stable background against which Congress can legislate with predictable effects.

*Morrison v. National Australia Bank Ltd*., 561 U.S. at 255, 261 (internal citations and quotation marks omitted). Accordingly, absent clear indication from Congress, HIPAA does not apply outside the United States.

34. HIPAA is silent as to any extraterritorial reach and contains no provision purporting to regulate foreign healthcare providers or custodians of health information located abroad. As mentioned above, the U.S. Department of Health and Human Services has stated that HIPAA, and the Privacy Rules issued thereunder, establish "a set of ***national*** standards for the

protection of certain health information" and address "the use and disclosure of individuals' health information – called 'protected health information' by organizations subject to" HIPAA. The U.S. Department of Health and Human Services has even confirmed that "the HIPAA Rules do not include requirements specific to protection of electronic protected health information (ePHI) processed or stored by a CSP or any other business associate outside of the United States[.]" *See Guidance on HIPAA & Cloud Computing*, Do the HIPAA Rules allow a covered entity or business associate to use a CSP that stores ePHI on servers outside of the United States? (available at *https://www.hhs.gov/hipaa/for-professionals/special-topics/health-information-technology/cloud-computing/index.html*). Accordingly, where medical records are maintained solely by healthcare providers located outside the United States, those records are not protected by HIPAA, and no HIPAA-compliant authorization is required for their disclosure or production.

**iii. *Because the Australian Mesh Claimants' Medical Records are Maintained Solely outside the United States, HIPAA Does Not Apply and a HIPAA Release Serves No Purpose.***

35. The Australian Mesh Claimants' medical records are maintained solely outside the United States. Accordingly, HIPAA does not apply to protect the disclosure of such records and there is no purpose in requiring a HIPAA Release. A HIPAA Release serves no purpose where HIPAA does not apply to protect the health information at issue – *i.e.*, health information maintained solely outside the United States. The Mesh Trust Agreement provides that the purpose of providing a HIPAA Release is to "enable the Mesh Trust to directly obtain the Mesh Claimant's medical records for evaluation in accordance with this Mesh Trust Agreement." *See* Mesh Trust Agreement, § 4.21(f) ("The Mesh Trust may request a Mesh Claimant to execute a HIPAA Release to enable the Mesh Trust to directly obtain the Mesh Claimant's medical records for evaluation in accordance with this Mesh Trust Agreement."). With respect to

medical records maintained in the United States, a HIPAA Release serves a purpose because HIPAA applies in the United States and, therefore, a HIPAA Release is necessary to directly obtain such records. See 45 C.F.R. § 164.502 ("A covered entity or business associate may not use or disclose protected health information, except as permitted or required by this subpart or by subpart C of part 160 of this subchapter.").

36. In contrast, however, a HIPAA Release does not allow or even affect the Mesh Trustee's ability to directly obtain medical records maintained solely outside the United States. Accordingly, because the Australian Mesh Claimants' medical records are maintained solely outside the United States, HIPAA does not apply to protect the disclosure of such records and there is no purpose in requiring a HIPAA Release. Instead, the disclosure and production of medical records maintained solely outside the United States is governed by foreign law.[7] Moreover, the Australian Mesh Claimants have already provided all of their available Medical Records; even if a HIPAA Release were applicable, its necessity here would be moot.

**c. The Mesh Trustee's Disallowance of the Australian Mesh Claims Because a HIPAA Release Was Not Provided Should be Declared Null and Void, and of No Effect.**

37. The criteria set forth in section 3.2.3 of the Mesh Claims Process for establishing an Allowed Mesh Claim expressly provide that a HIPAA Release need only be submitted "if applicable." It is, therefore, a *sine qua non* that if a HIPAA Release is not applicable,

---

[7] Because the Medical Records of the Australian Mesh Claimants were maintained solely in Australia, Australian law governs their disclosure and production. Under Australian law – specifically, the Privacy Act 1988 (the "Act") – organizations to which the Act applies are permitted to collect, use and disclose personal health information only with the individual's consent or where a "permitted general situation exists." *See* Act, Schedule 1, APP 6.2(c)). A permitted general situation includes where the use or disclosure is "reasonably necessary for establishing, exercising or defending a legal or equitable claim." *See* Act § 16A. In compliance with that law, the Australian Mesh Claimants provided all available Medical Records required for purposes of administering the Mesh Claims Trust and evaluating their claims, and the Mesh Trustee was and is free to review those records under applicable Australian law. *See* Morrison Decl., ¶¶ 35.

it need not be provided to establish an Allowed Mesh Claim, and the disallowance of the Australian Mesh Claimants' claims for failure to provide one is void under the Mesh Trust Agreement. Though the Mesh Trust Agreement contains language stating that the Trust Submission Form "shall include" a HIPAA Release form, *see id.* at § 4.1(b), this language should not override the clear language of section 3.2.3 of the Mesh Claims Process. Nor should this inconsistent language override the undue hardship that would befall the Australian Mesh Claimants if their claims are disallowed for failure to provide a form that serves no purpose whatsoever.

38. To require a HIPAA Release for each of the approximately 6,000 Australian Mesh Claimants elevates form over substance, causes unnecessary hardship and delay, and the incurrence of unnecessary expenses, inconsistent with the Bankruptcy Rules. Bankruptcy Rule 1001 provides, in pertinent part, that the Bankruptcy Rules "must be construed, administered, and employed by both the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001; *see In re Freeman*, 540 B.R. 129, 136 (Bankr. E.D. Pa. 2015) (finding that denying a debtor's objection to a claim for failure to follow the typical claims objection procedures where there was no "functional" difference between what the debtor did and the typical claims objection procedures "would exalt form over substance, an outcome that is not compelled by the rules of court" (citing Fed. R. Bankr. P. 1001)). To disallow each claim of the Australian Mesh Claimants for failure to submit a form that serves no purpose is therefore inconsistent with the Bankruptcy Rules and the integrity of the bankruptcy process, and should not be permitted.

39. Accordingly, Plaintiffs have shown a likelihood of success on the merits.

**iii. <u>Public Interest</u>**

40. In analyzing the public interest prong, a court must consider "the public consequences in employing the extraordinary remedy of injunction," *Yang*, 960 F.3d at 135-36 (quoting *Winter*, 555 US. at 24), and ensure that the proposed injunction "does not cause harm to the public interest," *Sec. & Exch. Comm'n v. Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012). Granting injunctive relief here in no way causes harm to the public interest, particularly where the Mesh Trustee has made no public statement as to when she will make distributions. Rather, granting injunctive relief here promotes the public interest as the public has a significant interest in ensuring the integrity of the bankruptcy process and system.

41. The Mesh Trustee's elevation of form over substance by requiring a HIPAA Release for each of the approximately 6,000 Australian Mesh Claimants where such release serves no purpose simply causes unnecessary hardship and delay and the incurrence of unnecessary expenses, inconsistent with the Bankruptcy Rules and the integrity of the bankruptcy system. *See In re Freeman*, 540 B.R. at 136. Accordingly, this factor supports granting injunctive relief.

## <u>NOTICE</u>

42. The Plaintiffs have given notice of this Motion to counsel for the Mesh Trustee, counsel for the Debtors, counsel for the GUC Trustee, counsel for the Official Committee of Unsecured Creditors, counsel for the non-Australian Mesh Claimants and the United States Trustee by overnight mail or email, and to all other parties in interest who filed a notice of appearance by first class mail or email. The Plaintiffs submit that given the specific relief sought, this notice, which includes the non-Australian mesh claimants, is sufficient and that no other notice is required.

**WHEREFORE**, for the foregoing reasons, the Plaintiffs request (a) entry of the proposed scheduling order and TRO in the form attached as Exhibit 7, and (b) following a hearing, entry of a preliminary injunction, together with such other a further relief as is appropriate.

Dated: New York, New York
June 3, 2026

R3M LAW, LLP
Attorneys for Jodie Philipsen, *et al.*
By:

/s/ Howard P. Magaliff
HOWARD P. MAGALIFF
437 Madison Avenue, 24th Floor
New York, NY 10022
646.453.7851
*hmagaliff@r3mlaw.com*

**EXHIBIT 1**

R3M LAW, LLP
437 Madison Avenue, 24th Floor
New York, NY 10017
646.453.7851
Howard P. Magaliff
Taylor M. Haga

*Attorneys for Jodie Philipsen and Janice Seymour, on behalf of themselves and all other similarly situated Australian Mesh Claimants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ENDO INTERNATIONAL plc, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-22549 (DSJ)<br><br>(Jointly Administered) |
| JODIE PHILIPSEN and JANICE SEYMOUR, on Behalf of Themselves and All Other Similarly Situated Australian Mesh Claimants,<br><br>Plaintiffs,<br><br>– against –<br><br>HEATHER BARLOW, as Trustee for the Mesh Trust,<br><br>Defendant. | Adv. Pro. No. 26-_____ |

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Jodie Philipsen ("Ms. Philipsen") and Janice Seymour ("Ms. Seymour" and, together with Ms. Philipsen, the "Plaintiffs"), on behalf of themselves and all other similarly

[1] The last four digits of Debtor Endo International plc's tax identification number are 3755. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

situated Australian Mesh Claimants,[2] by their attorneys R3M Law, LLP, as and for their complaint against Heather Barlow, as Trustee for the Mesh Trust ("Defendant" or "Mesh Trustee"), alleges the following upon knowledge as to their own acts and otherwise upon information and belief:

## INTRODUCTION

1. Plaintiffs bring this action (i) pursuant to Rule 7001(9) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for a declaratory judgment that HIPAA Releases are not applicable to or required for the Australian Mesh Claims, (ii) pursuant to Bankruptcy Rule 7001(9), a declaratory judgment that the Mesh Trustee's disallowance of more than 6,000 Australian Mesh Claims because the Australian Mesh Claimants did not submit HIPAA Releases is null and void, and of no effect, and (iii) pursuant to Rule 65(a) of the Federal Rules of Civil Procedure (the "Rules") and Bankruptcy Rule 7065 and section 105(a) of the Bankruptcy Code, a judgment permanently enjoining the Mesh Trustee from making any distribution to the holders of allowed Mesh Claims that do not include Australian Mesh Claims that have been allowed without consideration of HIPAA Releases.

## THE PARTIES

2. Plaintiffs are the representative lead plaintiffs in a class action suit against Astora Women's Health, LLC ("Astora"), a debtor, that was pending in the Federal Court of Australia on the filing date of the Debtors' petitions, and are creditors with filed claims.

3. Defendant is the trustee for the Endo Mesh Trust Agreement (the "Mesh Trust Agreement") formed pursuant to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International plc and its Affiliated Debtors* (as amended and

---

[2] Capitalized terms are defined in this Complaint.

supplemented, the "Plan") [ECF doc. 3849], as confirmed by the Court by Order dated March 22, 2024 (the "Confirmation Order") [ECF doc. 3960].

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and Section 7.15 of the Mesh Trust Agreement.

5. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). If any of the claims asserted in this adversary proceeding are determined to be non-core, Plaintiffs to the entry of final judgment by the Bankruptcy Court.

7. If the Court determines that the claims asserted by Plaintiffs constitute "disputes" within the meaning of section 7.14 of the Mesh Trust Agreement, Plaintiffs consent to submit to the ADR Process as set forth therein.

## GENERAL ALLEGATIONS

### A. The Basis for Plaintiffs' Claims

8. On July 5, 2006, Ms. Philpsen had surgery to address her pelvic organ prolapse condition, during which Perigee IntePro and Apogee IntePro implants (each a "Mesh Implant") were implanted through the vagina into her pelvic region. Between 2008 and 2013, Ms. Philipsen experienced complications caused by the Mesh Implants, which required her to undergo multiple additional surgeries and a vaginal hysterectomy.

9. On October 9, 2007, Ms. Seymour similarly had surgery to address her stress urinary incontinence condition, during which a MONARC Subfascial Hammock System (a "Sling Implant", and together with the Mesh Implants, the "Implants") was implanted through the vagina into her pelvic region. Between 2007 and 2017, Ms. Seymour also experienced

complications caused by the Sling Implant, requiring multiple surgeries to alleviate the complications.

10. The Plaintiffs suffered complications caused by the physical, mechanical, chemical, and surface characteristics of the Implants' non-absorbable polypropylene and the fact that they are implanted through the vagina.

## B. Procedural History of the Australian Class Action

11. On January 16, 2018 Ms. Philipsen commenced a representative proceeding in the Federal Court of Australia (the "Class Action"), on behalf of herself and other women who suffered from complications caused by Implants designed and made by American Medical Systems, LLC ("AMS"), a predecessor in interest to Astora. On July 31, 2018, Ms. Seymour was joined to the Class Action as the second lead applicant.

12. On June 25, 2019, AMS filed a Defence in response to the Lead Plaintiffs' Second Further Amended Originating Application and Statement of Claim. However, on December 4, 2020, AMS's solicitors informed Plaintiffs' attorneys, Shine Lawyers Pty Ltd. ("Shine"), that (a) AMS's liabilities had been transferred to Astora before the commencement of the Class Action, (b) the entity AMS was dissolved in June 2018, and (c) Astora should be substituted as Respondent in the Class Action. The Plaintiffs complied, and on March 1, 2021 they filed the Third Further Amended Originating Application and Statement of Claim. Subsequently, Astora filed a Defence of May 21, 2021.

13. On April 14, 2021, Plaintiffs filed their final Amended Originating Application, in which they further refined the common questions of law and fact relevant to the class and subclass members. To qualify as a class member, the woman must have received an Implant and suffered a pleaded complication that was caused by the Implant.

**C. The Motion for Class Certification and Consolidated Claim**

14. On June 1, 2023, Plaintiffs filed a motion in this Court for an order certifying the class of Australian Mesh Claimants and authorizing the filing of a class proof of claim (the "Class Claim Motion") [ECF doc. 2138].

15. Following objections to the Class Claim Motion filed by, *inter alia*, the Debtors, the Official Committee of Unsecured Creditors and the Official Committee of Opioid Creditors, Plaintiffs agreed to file a single consolidated claim on behalf of the Australian Mesh Claimants. *See Stipulation By and Among Jodie Philipsen and Janice Seymour, The Official Committee of Unsecured Creditors, The Official Committee f Opioid Claimants, and the Debtors Resolving the Class Claim Motion* (the "Claims Stipulation") [ECF doc. 2246].

16. Pursuant to the Claims Stipulation, the Australian Mesh Claimants filed a consolidated proof of claim and submitted required supporting documents and medical records (the "Australian Mesh Consolidated Claim").

17. The Australian Mesh Claimants did not, and cannot, submit HIPAA Releases.

**D. The Mesh Trust Agreement and Scheduled Claims Process**

18. On April 23, 2024, the Debtors filed the *Seventh Plan Supplement* (the "Plan Supplement"). [ECF doc. 4213]. The final execution version of the Mesh Trust Agreement is at pages 477 – 543 of the Plan Supplement.

19. The Mesh Trust Agreement defines the "Mesh Claims Process" at section 1.2.12 as "the schedule of procedures for determination of Allowed Amounts of Eligible Mesh Claims" attached as Exhibit 1 to the Mesh Trust Agreement. The Mesh Claims Process is at pages 510 – 543 of the Plan Supplement.

20. Section 4.3(a) of the Mesh Trust Agreement states: "The Mesh Claims Process shall set forth the process for determining the Allowed Claim Amount of each Eligible Mesh Claim."

21. Section 4.3(b) of the Mesh Trust Agreement states: "The Mesh Claims Process will be incorporated into and shall become part of this Mesh Trust Agreement."

22. Section 3.2(b) of the Mesh Claims Process, entitled "General Criteria for Allowed Mesh Claims," provides in part: "To establish an Allowed Mesh Claim in accordance with this Mesh Claims Process, an Eligible Mesh Claimant must satisfy all of the following criteria: … 3.2.3 Complete, sign and submit the HIPAA Release, **if applicable**; …"

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment Pursuant to Bankruptcy Rule 7001(9) That HIPAA Releases Are Not Applicable to Australian Mesh Claimants)**

23. Plaintiffs incorporate each of the foregoing paragraphs as if fully set forth herein.

24. The Mesh Trust Agreement provides that the purpose of providing a HIPAA Release is to "enable the Mesh Trust to directly obtain the Mesh Claimant's medical records for evaluation in accordance with this Mesh Trust Agreement." *See* Mesh Trust Agreement, § 4.21(f) ("The Mesh Trust may request a Mesh Claimant to execute a HIPAA Release to enable the Mesh Trust to directly obtain the Mesh Claimant's medical records for evaluation in accordance with this Mesh Trust Agreement.").

25. A HIPAA Release serves a purpose with respect to medical records maintained in the United States because HIPAA applies in the United States and, therefore, a HIPAA Release is necessary to directly obtain such records. See 45 C.F.R. § 164.502 ("A covered entity

or business associate may not use or disclose protected health information, except as permitted or required by this subpart or by subpart C of part 160 of this subchapter.”).

26. HIPAA does not apply extraterritorially.

27. A HIPAA Release does not permit or affect the Mesh Trustee’s ability to directly obtain medical records maintained solely outside the United States. The Australian Mesh Claimants’ medical records are maintained solely outside the United States, and HIPAA does not apply to protect the disclosure of such records.

28. The disclosure and production of medical records maintained solely outside the United States is governed by foreign law.

29. Because the Medical Records of the Australian Mesh Claimants were maintained solely in Australia, Australian law governs their disclosure and production. Under Australian law – specifically, the Privacy Act 1988 (the “Act”) – organizations to which the Act applies are permitted to collect, use and disclose personal health information only with the individual’s consent or where a “permitted general situation exists.” *See* Act, Schedule 1, APP 6.2(c)). A permitted general situation includes where the use or disclosure is “reasonably necessary for establishing, exercising or defending a legal or equitable claim.” *See* Act § 16A.

30. In compliance with Australian law, the Australian Mesh Claimants authorized the release of their medical records to their attorneys in Australia, Shine Lawyers (“Shine”).

31. The Australian Mesh Claimants, through Shine, provided all available medical records required for purposes of administering the Mesh Claims Trust and facilitating the Mesh Trustee’s evaluation of their claims.

32. Based upon the foregoing, Plaintiffs are entitled to a declaratory judgment that a HIPAA Release is not applicable to the Australian Mesh Claims and is not required for the Mesh Trustee to evaluate those claims.

**<u>SECOND CLAIM FOR RELIEF</u>**
**(Declaratory Judgment Pursuant to Bankruptcy Rule 7001(9) That The Mesh Trustee's Disallowance of the Australian Mesh Claims For Failure to Provide HIPAA Releases is Null and Void)**

33. Plaintiffs incorporate each of the foregoing paragraphs as if fully set forth herein.

34. On March 19, 2025, the following email exchange ensued between counsel for the Australian Mesh Claimants and the Mesh Trustee:

> R3M to Robinson + Cole:
>
> We had a productive discussion with Justin Hughes at Stretto, and have addressed all of the noted deficiencies in Stretto's chart, but there is one clarification. We did not supply HIPPA forms for the Australian claimants because they are not subject to it and have no idea even what HIPPA is. If this is something that Heather thinks is nonetheless mandatory for some reason, then I'd like to discuss. It is not possible to get thousands of these forms signed by tomorrow. This is one of the reasons I wrote to you several weeks ago asking to speak about the deficiencies, which you declined to do at the time.
>
> Robinson + Cole to R3M:
>
> As far back as May 2024, the Trust has been consistent that it would enforce the requirements of the Plan Documents and Trust Submission Procedures and would not make exceptions to those requirements.
>
> In February 2025, in response to a communication from you advising that certain required product-specific and medical-specific information was not available for a subset of the claimants you represented, the Trust responded that all claims as to which proof of a qualifying product or medical forms supporting qualifying injury that were submitted by your firm were disallowed.

> [T]he Trust has been very clear throughout that each and every document subject to a deficiency notice must be submitted by the deadline of March 20, 2025. **Without a completed HIPPA form, the claims will be considered deficient and will be disallowed. We do not believe a dialogue on this will be productive.** (Emphasis added).
>
> R3M to Robinson + Cole:
>
> Further to my email yesterday, there is no Australian equivalent to the HIPAA form. Healthcare providers will typically require an authority signed by the patient if someone (*e.g.* their lawyer) wants to obtain their medical records. Under the *Privacy Act 1988* (the Act), organizations to whom the Act applies (*e.g.* Shine) are permitted to collect, use and disclose personal information with the individual's consent or where a "*permitted general situation exists"* (see the Act, Schedule 1, APP 6.2(c)). A permitted general situation includes where the use or disclosure is "*Reasonably necessary for establishing, exercising or defending a legal or equitable claim*" (§ 16A of the Act). This has already been done. It is how Shine was able to send records in the first place to establish the claims.
>
> We understand the Trust's position, but this is literally elevating the form over substance. HIPAA is simply inapplicable. **The Trust has all of the records we have obtained and the authority to look at them.** The claimants should not be penalized for the failure to deliver the form. (Emphasis added).

35. Subsequently, on June 9, 2025, following the submission of remaining documents to support the claims, counsel for the Australian Mesh Claimants emailed the Mesh Trustee's counsel again to request an update. On June 5, 2025 counsel responded:

> Thank you for your below email.
>
> The Trustee and her advisors continue to work diligently to reconcile claims, and, consistent with practice to date, will continue to report to the Court and Trust beneficiaries as required by the Trust documents. That said, there is no update at this time. The Trust reiterates its position that no claimant is entitled to receive one-off information or trust analysis that would place them at an advantage over another creditor.

> The Trustee appreciates your client's patience as we continue our work and progress.

36. On April 28, 2026, after more than a year during which the Australian Mesh Claimants heard nothing from the Mesh Trustee, counsel for the Australian Mesh Claimants emailed counsel for the Mesh Trustee to ask about that status of the Mesh Trustee's review of the Australian Mesh Claims.

37. On May 1, 2026, counsel for the Mesh Trustee replied and advised that all of the Australian Mesh Claimants' claims were disallowed because no HIPAA Releases were provided:

> As far back as May 2024, the Trust has been consistent that it would enforce the requirements of the Plan Documents and Trust Submission Procedures and would not make exceptions to those requirements.
>
> In February 2025, in response to a communication from you advising that certain required product-specific and medical-specific information was not available for a subset of the claimants you represented, the Trust responded that all claims as to which proof of a qualifying product or medical forms supporting qualifying injury that were submitted by your firm were disallowed.
>
> In March 2025, and again in September 2025, when we spoke outside the program room at NCBJ, the Trust has been consistent that failure by any claimant to submit all information required by the Plan Documents and Trust Submission Procedures would result in disallowance. Specifically, the Trust has repeatedly advised you that absence submission of a properly completed HIPPA form, claims would be considered deficient and would be disallowed.
>
> Because the Trust is not required to provide notice of disallowance and to avoid depletion of the limited funds available for compensation of claimants, the Trust does not intend to provide individualized notice of disallowance. However, as you are aware, no claimant represented by your firm complied with all of the requirements of the Claims Submission Procedures.
>
> The Trust continues to review and assess claims which complied with all of the requirements laid out in the Plan Documents and



4924-1295-6333, v. 7

Trust Submission Procedures. The Mesh Trust will reach out to the eligible claimants and/or their representatives when the Mesh Trust is ready to make a distribution.

38. Because (i) HIPAA is inapplicable to the Australian Mesh Claims, (ii) the Australian Mesh Claimants submitted all available medical records, and (iii) no purpose would be served by requiring the Australian Mesh Claimants to submit HIPAA Releases, the Mesh Trustee's disallowance of the Australian Mesh Claims for failure to submit HIPAA Releases was arbitrary and capricious.

39. Based upon the foregoing, Plaintiffs are entitled to a declaratory judgment that the disallowance of the Australian Mesh Claims for failure to provide HIPAA Releases is null and void, and of no effect.

**<u>THIRD CLAIM FOR RELIEF</u>**
**(Permanent Injunction Against Distributions to Mesh Claimants That Exclude the Australian Mesh Claimants Based Upon Disallowance for Failure to Provide HIPAA Releases)**

40. Plaintiffs incorporate each of the foregoing paragraphs as if fully set forth herein.

41. To the extent that the Mesh Trustee intends to make distributions to the holders of allowed Eligible Mesh Claims that exclude the Australian Mesh Claimants utilizing available insurance proceeds and other assets of the Mesh Trust prior to the adjudication of this complaint, the Australian Mesh Claimants will be irreparably injured by the dissipation of the sole assets available to pay all allowed Mesh Claims.

42. Based on the foregoing, Plaintiffs are entitled to a judgment permanently enjoining the Mesh Trustee from making distributions to the holders of allowed Eligible Mesh Claims prior to a determination of whether Australian Mesh Claims should be allowed or disallowed without consideration of the absence of HIPAA Releases.

**WHEREFORE**, Plaintiffs requests the entry of judgment as follows:

(a) On the first claim for relief, a declaratory judgment that HIPAA Releases are not applicable or required for the Australian Mesh Claims;

(b) On the second claim for relief, a declaratory judgment that the Mesh Trustee's disallowance of the Australian Mesh Claims solely for the failure to provide HIPPA Releases is null and void, and of no effect;

(c) On the third claim for relief, a permanent injunction prohibiting the Mesh Trustee from making distributions to the holders of allowed Eligible Mesh Claims prior to a determination of whether Australian Mesh Claims should be allowed or disallowed without consideration of the absence of HIPAA Releases;

(d) Costs and attorney fees; and

(e) Such other and further relief as is necessary and proper.

Dated: New York, New York
June 2, 2026

R3M LAW, LLP
Attorneys for the Plaintiffs
By:

/s/ Howard P. Magaliff
HOWARD P. MAGALIFF
437 Madison Avenue, 24th Floor
New York, NY 10022
646.453.7851
*hmagaliff@r3mlaw.com*

**EXHIBIT 2**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ENDO INTERNATIONAL plc, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-22549 (JLG)<br><br>(Jointly Administered) |
| JODIE PHILIPSEN and JANICE SEYMOUR, on Behalf of Themselves and All Other Similarly Situated Australian Mesh Claimants,<br><br>Plaintiffs,<br><br>– against –<br><br>HEATHER BARLOW, as Trustee for the Mesh Trust,<br><br>Defendant. | Adv. Pro. No. 26-_____ |

## DECLARATION OF SIMON MORRISON

I, Simon Morrison, of 160 Ann Street, Brisbane, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge, information and belief:

1. I am the Executive Director and Head of International Mass Torts of Shine Justice Ltd (**Shine**), an Australian publicly listed company. Shine Lawyers is the largest legal entity within the Shine Justice Group and a division of Shine Lawyers is the Class Actions department.

2. Shine Lawyers are the solicitors for the plaintiffs, Jodie Philipsen and Janice Seymour (collectively the class representatives, referred to as the **Applicants**) in Federal Court of Australia representative proceeding NSD35 of 2018 commenced by Shine by Originating Application filed on 16 January 2018 (the **Astora Class Action**). In the US Bankruptcy Proceedings, the Applicants are referred to as the **Plaintiffs**.

[1] The last four digits of Debtor Endo International plc's tax identification number are 3755. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at *https://restructuring.ra.kroll.com/Endo.* The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

Robinson+Cole

NATALIE D. RAMSEY

1201 North Market Street, Suite 1406
Wilmington, DE 19801
Main (302) 516-1700
Fax (302) 516-1699
nramsey@rc.com
Direct (302) 516-1702
Cell (302) 354-9593

Also admitted in New York
and Pennsylvania

***Via Email and First Class Mail***

February 11, 2025

Howard P. Magaliff, Esquire
R3M Law, LLP
6 E 43rd Street, 21st Floor
New York, NY 10017

Re: Disallowance of Mesh Claims asserted by Australian Claimants without medical records

Dear Howard:

This notice concerns the 2,158 Australian Claimants for whom you have advised medical records "were not available and who have not uploaded further documentation themselves prior to October 7" (the "Australian Claimants Without Medical Records").

The Mesh Trust was created to provide for compensation to Allowed Mesh Claims (as defined in the Mesh Trust Agreement) arising from the use of transvaginal surgical mesh products "designed to treat pelvic organ prolapse or stress urinary incontinence against American Medical Systems Holdings, Inc. and any successor or predecessor thereof, or any other Debtor, and any successor or predecessor thereof." *See* Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International Plc and Its Affiliated Debtors (the "Plan"), Docket No. 3849, Article I, Section 1.1.309 (defining "Mesh Claims").

Among other requirements, the Mesh Trust requires proof of an Eligible Debtor Product. As acknowledged in your email dated November 6, 2024, the spreadsheet created by Shine was sourced from various lists produced by health providers subpoenaed in the Joint Mesh Proceedings. The information provided does not permit the Mesh Trust to determine whether the

Robinson+Cole



device implanted in any of the Australian Class Action Claimants is an Eligible Debtor Product.

In addition, the Trust Submission Form for Mesh Claims Process specifically requires proof of an injury:

> ***For the avoidance of doubt, you are required to attach medical records to this form to establish that you were implanted with an Eligible Debtor Product, and in order to potentially receive a recovery on account of your claims pursuant to the Mesh Claims Process, you must attach medical records sufficient to establish that you had one or more Qualifying Surgeries and/or treatments necessary to treat a condition or symptom attributable to implantation of the Eligible Debtor Product. All such medical records must be provided by the August 5, 2024 deadline in order to be considered by the Mesh Trust.***

*See* https://cases.stretto.com/endoguctrust/, Trust Submission Form for Mesh Claims Process, throughout. Further, both the fact of an injury and the timing of an injury must be considered by the Mesh Trust. The Mesh Trust Agreement explicitly provides that "no EFBD Claims (as defined in the Plan) or Future Mesh Claims (as defined in the Plan) shall be Eligible Mesh Claims under any circumstances." *See* Notice of Filing of Fourth Plan Supplement, Dkt. No. 4164, Exhibit 1-C, the Mesh Trust Claims Agreement, Article I (Definitions and Interpretations), Section 1.2.9.

Without individual medical records demonstrating an injury (one or more Qualifying Surgeries and/or treatments necessary to treat a condition or symptom attributable to implantation of the Eligible Debtor Product) arising from an Eligible Debtor Product which occurred before the Bar Date, a Mesh Claim is not compensable.

Finally, as noted in your email, the deadline for submission of Trust Claim Forms has passed. Aside from the substantive issues associated with the claims of the Australian Claimants Without Medical Records, the protocol that you propose would result in prejudicial delay and administrative cost that would decrease the recovery to the holders of Allowed Mesh Claims.

As we have consistently advised since creation of the Mesh Trust, the inability to provide individual medical records for these claimants does not comply with the requirements of the Mesh Claims Process established by the Plan and Mesh Claims Trust Documents in the *Endo* bankruptcy case. It would be both contrary to the purposes of the Mesh Trust and inequitable to claimants who meet the Medical/Exposure Criteria established by the Plan to modify those requirements in a way that would allocate Trust assets to individuals who do not hold compensable claims.

Robinson+Cole



For these reasons, the Mesh Trust is Disallowing each of the 2,158 Australian Claimants Without Medical Records.

We appreciate your advocacy on the part of the Australian Claimants Without Medical Records and regret any personal hardship this decision causes to a woman who would have qualified for compensation had medical records been available.

The Mesh Trust is continuing to evaluate the claims submitted by the 3,230 Australian Claimants who provided some form of medical record. Allowance or disallowance of those claims is not covered by this letter.

Very truly yours,

Natalie D. Ramsey

Natalie D. Ramsey

cc: Endo Mesh Trustee (*via email*)

3. I have been managing the Chapter 11 bankruptcy proceedings in this matter in the United States (the **US Bankruptcy Proceedings**).

4. I make this affidavit in support of the motion of the Plaintiffs for a preliminary injunction because the submission of HIPAA Releases is not applicable to the Australian Mesh Claimants (**Motion**).

5. Where I depose to matters in this affidavit on the basis of information provided to me, I believe those matters to be true and correct.

6. I am not authorised to waive the Plaintiffs' or Australian Mesh Claimants' legal professional privilege, and nothing in this affidavit should be construed as involving a waiver of that privilege. To the extent that anything in this affidavit may properly construed as such, I withdraw and do not rely on that part of the affidavit.

7. I am an experienced practitioner in civil litigation, having been admitted to practice in 1993.

8. I am a former National President of the Australian Lawyers' Alliance (**ALA**), and chaired the ALA's National Workers Compensation Special Interest Group. I was a member for 15 years of the Board of Governors of the American Association of Justice.

9. I am a Queensland Law Society Accredited Specialist in personal injury law, and have given evidence at government inquiries, assisted in drafting legislation, and have been a regular speaker at national and state conferences in this field.

## A Summary

10. The purpose of this affidavit is to summarise the relevant provisions of Australian laws governing health records collection, use, and disclosure.

11. Australia's privacy laws provide robust protections for personal health information such as medical records, with requirements for consent and confidentiality that broadly mirror the goals of HIPAA.

12. At the outset, I note that a signed HIPAA Release form would not enable the Mesh Trustee to obtain the Australian Mesh Claimants' medical records from Australian health providers.

13. All Australian healthcare providers are bound by law to protect patient health records, and breaches can result in significant penalties. Different statutory regimes apply depending on whether the health information is created or collected by a private or public healthcare provider; and if public, whether administered by the Federal government or by the government of a State or Territory.

14. Regardless of the specific statutory regime which applies, the laws all permit the collection, use, and disclosure of health information:

    a. with the individual's consent, and

    b. where it is reasonably necessary to establish the existence of, exercise or defend a legal or equitable claim.

15. Breaches of the relevant laws are investigated by regulators who can impose heavy civil penalties.

16. Thus, all Australian Mesh Claimants' health data enjoys rigorous legal protection under Australian law.

**B Privacy Act 1988 (Cth)**

17. The *Privacy Act 1988* (Cth) (**Privacy Act**) is the principal piece of Australian legislation protecting the collection, use, storage and disclosure of personal information about individuals, including health information.

18. It applies to, amongst other (which are not relevant for the present purposes), private sector health service providers and Federal government agencies (referred to as **APP entities** under the Privacy Act)

19. The Privacy Act does not apply to State and Territory public sector health service providers, such as public hospitals. These entities are governed by State and Territory laws, which are discussed in paragraphs 31 to 33 below.

20. The Privacy Act contains 13 Australian Privacy Principles (**APPs**), which govern the handling, use, and management of personal information. The APPs provide the framework for protecting individuals' personal information in Australia.

21. Under section 15 of the Privacy Act, APP entities must comply with the APPs.

22. Under section 13, breach of an APP is considered an interference with the privacy of an individual.

23. Breaches of the Privacy Act can result in large civil penalties (up to AUD$50 million for serious breaches) and are actively enforced by the relevant regulator. Individuals also have the right (since 10 June 2025) to sue for serious invasions of privacy, including misuse of private information.

24. Of particular relevance to the present circumstances are APP 6 – use or disclosure of personal information, and APP 8 – cross-border disclosure of personal information. These are discussed in more detail in paragraphs 24 to 29 below.

***APP 6: Using or disclosing personal information with the individual's consent and other permissible uses***

25. Under APP 6, personal information collected for a particular purpose can only be used or disclosed for another purpose (a "*secondary purpose*") where:

    a. the individual has consented;

    b. the individual would reasonably expect the APP entity to use or disclose the information for the secondary purpose, and the secondary purpose is directly related to the primary purpose;

    c. the use or disclosure of the information is required or authorised by or under an Australian law or a court/tribunal order; or

    d. a "*permitted general situation*" exists. A permitted general situation is defined in section 16A of the Privacy Act as including "[t]*he collection, use or disclosure is reasonably necessary for establishing, exercising, or defending a legal or equitable claim*".

***APP 8: Disclosing information to an overseas (e.g. outside Australia) recipient***

26. APP 8 and section 16C of the Privacy Act govern the responsibilities of APP entities when disclosing personal information (including health information such as medical records) to overseas recipients.

27. Under section 16C, if an APP entity discloses personal information to an overseas recipient and that recipient engages in conduct that would breach the APPs (if they were subject to them), the APP entity is taken to have committed that breach (unless an exception applies).

28. APP 8.1 requires that, before disclosing personal information to an overseas recipient, an APP entity must take reasonable steps to ensure the recipient does not breach the APPs in relation to that information.

29. APP 8.1 does not apply if one of the exceptions in APP 8.2 applies. The exceptions in APP 8.2 include, relevantly:

    a. the entity reasonably believes that the recipient of the information is subject to a law, or binding scheme, that has the effect of protecting the information in a way that is substantially similar to the APPs; and there are mechanisms the individual can access to take action to enforce that protection of the law or binding scheme; or

b. the disclosure of the information is required or authorised by or under an Australian law or a court/tribunal order; or

c. a permitted general situation exists in relation to the disclosure of the information. Section 16A lists the general permitted situations for the collection, use or disclosure of personal information. I refer the Court to paragraph 25.d above.

30. These provisions ensure accountability for cross-border disclosures even where the overseas recipient is not directly bound by the Privacy Act or the APPs.

**C State and Territory Legislation: public health care providers**

31. Each Australian State and Territory has its own legislation governing health information held or created by public sector providers within their respective jurisdictions.

32. While the specific provisions vary, they broadly permit:

a. the collection, use, and disclosure of health information with the individual's consent; and

b. the collection (and in some cases use/disclosure) where necessary for the establishment, exercise, or defence of a legal or equitable claim.

33. Many of the State and Territory statutes are either expressly directed at health records or are contained within provisions of health-related legislation:

- *Health Records Act 2001* (Vic)
- *Health Records and Information Privacy Act 2002* (NSW)
- *Information Privacy Act 2009* (Qld)
- *Personal Information and Protection Act 2004* (Tas)
- *Health Records (Privacy and Access) Act 1997* (ACT)
- *Information Act 2002* (NT)

34. Two jurisdictions, South Australia and Western Australia, have historically lacked dedicated privacy statutes. However, in South Australia, public health providers are subject to confidentiality provisions in various statutes, including under the *Health Care Act 2008*, and are required by administrative order to comply with 'Information Privacy Principles' largely consistent with the APPs. In Western Australia, broadly equivalent privacy protection for health information is contained in the *Health Services Act 2016* (WA).

35. These State and Territory laws cumulatively provide protections broadly equivalent to those under the Privacy Act.

**D Authorisation to Release Medical Records**

36. Personal information including medical records was provided to the Mesh Trustee by Shine Lawyers on behalf of the Plaintiffs and the Australian Mesh Claimants. This disclosure was either:

   a. Expressly or impliedly consented to by the Australian Mesh Claimants,

   b. The primary purpose for which the information was provided to Shine, and/or

   c. In furtherance of the Australian Mesh Claimants' claims for compensation arising from the claims the subject of the Astora Class Action.

37. As such, the disclosure of the Australian Mesh Claimants personal information was done in accordance with Australian law.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
09 May, 2026

Simon Morrison

**EXHIBIT 3**

**EXHIBIT 4**

R3M
R3M LAW, LLP

HOWARD P. MAGALIFF

**Direct** 646.453.7854
**Cell** 203.417.4070
**Fax** 212.913.9642
**Email** hmagaliff@r3mlaw.com

February 17, 2025

**BY EMAIL (nramsey@rc.com)**

Natalie D. Ramsey, Esq.
Robinson + Cole
1201 North Market Street, Suite 1406
Wilmington, DE 19801

Re: Mesh Claimants Without Medical Records

Dear Natalie:

I write to respond to your February 11, 2025 concerning the disallowance of claims filed by Australian Claimants Without Medical Records.[1] While we disagree that the protocol we suggested to address these 2,158 Claims will result in the prejudice and delay that you mention, the Mesh Trust's disallowance of the Claims is at best premature.

Article IV, § 4.1(e) of the Endo Mesh Trust Agreement provides that we have thirty (30) days from the date of a notice of deficiency to provide the requested information or the Claims may be deemed to be disallowed for all purposes of the Mesh Trust. On February 11, our office received notice from the Endo GUC Trust Inquiries (*endoinquiries@stretto.com*), over the signature of Robinson + Cole, with the subject line, "ENDO Mesh Trust Claim Submission Deficiency" (the "Deficiency Notice"). A copy of the Deficiency Notice is attached. Our office also received a spreadsheet detailing the purported deficiencies for each Australian Claimant Without Medical Records.

Pursuant to the Endo Mesh Trust Agreement and the Deficiency Notice, we have until March 13, 2025 to cure the deficiencies. Accordingly, we reject the Mesh Trust's disallowance of the Claims filed by the Australian Claimants Without Medical Records.

Separately, we do not wish to prolong this process or generate additional administrative costs for the Mesh Trust that could lessen the distribution amounts. However, the unwillingness of the Mesh Trustee to even discuss how our proposal to resolve the Claims might be tailored to address the legitimate concerns of both the Australian Claimants Without Medical Records and the Mesh Trust may leave us no choice but to ask the Court to weigh in and consider whether,

[1] Capitalized terms have the meanings in your letter.

given the differences between the Australian class action system and the bankruptcy claims resolution process that we outlined, the disallowance of more than 2,000 Claims is fair and equitable.

We hope you will reconsider and accept our offer to engage in good faith discussions rather than summarily dismiss our suggestions.

Sincerely,

Howard P. Magaliff

encl.

cc: Simon Morrison, Esq.
Endo Mesh Trustee

**Howard Magaliff**

**Subject:** RE: ENDO Mesh Trust Claim Submission Deficiency

**From:** Endo GUC Trust Inquiries <endoinquiries@stretto.com>
**Sent:** Tuesday, February 11, 2025 8:23 PM
**To:** Heymi Colon <HColon@R3MLaw.Com>
**Subject:** ENDO Mesh Trust Claim Submission Deficiency

Dear Claim-Filer:

You are receiving this notice on behalf of Heather L. Barlow, in her capacity as Trustee for the Endo Mesh Trust (the "**Trustee**"), because you have submitted one or more general unsecured claim(s) (the "**Claim(s)**") to the Endo Mesh Trust (the "**Mesh Trust**") that has/have been flagged for one or more deficiencies. This notice ("**Notice**") serves as notice under Art. IV § 4.1(e) of the Endo Mesh Trust Agreement that you have thirty (30) days from the date of this Notice to provide the requested information or your Claim(s) may be deemed to be disallowed for all purposes of the Mesh Trust.

FAILURE TO PROVIDE THE REQUESTED INFORMATION WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE MAY CAUSE YOUR CLAIM(S) TO BE DEEMED NON-COMPENSABLE UNDER THE MESH CLAIMS PROCESS AND THE MESH TRUST AGREEMENT.

In order to cure the deficiency(ies) listed on the Deficiency Spreadsheet, which will be shared with you via a subsequent email, you must submit the missing information/documentation by responding to this email. Note that deficient conditions are marked by an "X" in columns L – U of the spreadsheet. For full descriptions of the deficient conditions, along with how to cure such deficient conditions, please look for the corresponding deficient condition(s) on the "Legend" document.

Before returning any spreadsheets back to us, *please password protect the file and provide us with the password in a separate email*.

When submitting PDFs of any HIPAA Release Forms, supporting documentation, W9/W8 forms, and/or any other materials for each Eligible Client, we recommend labeling the PDFs in a manner that allows us to identify which Eligible Client the PDF pertains to. For example, that could be the corresponding Kroll Claim # or the client's name.

For transmitting the PDFs, we encourage transmittal encrypted via email or other secured method of electronic transmission. The latter may be required depending on the size of the files being transmitted. If you would like for Stretto to provide a method of transmission, please let us know.

Complying with this Notice does not guarantee payment of your Claim. The Trustee reserves all rights to identify additional deficiencies, object to your Claim(s) on the merits, or otherwise contest and deny your right to payment from the Mesh Trust.

Sincerely,

Robinson+Cole

Counsel for the Mesh Trustee

**EXHIBIT 5**

**From:** Ramsey, Natalie D.
**To:** Howard Magaliff
**Cc:** Simon Morrison; Craig Allsop; Lorne Franks; Heymi Colon
**Subject:** RE: Endo Claims Deficiencies
**Date:** Wednesday, March 19, 2025 2:20:50 PM

Howard, the Trust has been very clear throughout that each and every document subject to a deficiency notice must be submitted by the deadline of March 20, 2025. Without a completed HIPPA form, the claims will be considered deficient and will be disallowed. We do not believe a dialogue on this will be productive.

Thank you, Natalie

**Natalie D. Ramsey**
Robinson & Cole LLP
1201 North Market Street
Suite 1406
Wilmington, DE 19801
Direct 302.516.1702 | Fax 302.516.1699
nramsey@rc.com | Bio | V-Card

**Robinson+Cole**

Boston | Hartford | New York | Washington, DC | Providence | Miami
Stamford | Wilmington | Philadelphia | Los Angeles | Albany | www.rc.com

**From:** Howard Magaliff <HMagaliff@R3MLaw.Com>
**Sent:** Wednesday, March 19, 2025 1:54 PM
**To:** Ramsey, Natalie D. <NRamsey@rc.com>
**Cc:** Simon Morrison <smorrison@shine.com.au>; Craig Allsop <callsopp@shine.com.au>; Lorne Franks <lfranks@shine.com.au>; Heymi Colon <HColon@R3MLaw.Com>
**Subject:** Endo Claims Deficiencies
**Importance:** High

**CAUTION: EXTERNAL EMAIL**

Natalie,

We had a productive discussion with Justin Hughes at Stretto, and have addressed all of the noted deficiencies in Stretto's chart, but there is one clarification. We did not supply HIPPA forms for the Australian claimants because they are not subject to it and have no idea even what HIPPA is. If this is something that Heather thinks is nonetheless mandatory for some reason, then I'd like to discuss. It is not possible to get thousands of these forms signed by tomorrow. This is one of the reasons I wrote to you several weeks ago asking to speak about the deficiencies, which you declined to do at the time.

Thank you for your attention.

R3M

R3M LAW, LLP

HOWARD P. MAGALIFF

6 East 43rd Street, 21st Floor ▪ New York, NY 10017
**O** 646.453.7851 ▪ **D** 646.453.7854 ▪ **M** 203.417.4070
**F** 212.913.9642 ▪ hmagaliff@r3mlaw.com ▪ r3mlaw.com

---

This transmittal may be a confidential R+C attorney-client communication or may otherwise be privileged or confidential. If it is not clear that you are the intended recipient, you are hereby notified that you have received this transmittal in error; any review, dissemination, distribution, or copying of this transmittal is strictly prohibited. If you suspect that you have received this communication in error, please notify us immediately by telephone at 1-860-275-8200, or e-mail at it-admin@rc.com, and immediately delete this message and all its attachments.

---

**EXHIBIT 6**

| | |
|---|---|
| **From:** | Ramsey, Natalie D. |
| **To:** | Howard Magaliff; Gillen, Elizabeth |
| **Cc:** | Simon Morrison |
| **Subject:** | RE: Endo - AUS Mesh Claimants |
| **Date:** | Friday, May 1, 2026 12:23:53 PM |

Dear Howard,

I hope that you have been well.

As far back as May 2024, the Trust has been consistent that it would enforce the requirements of the Plan Documents and Trust Submission Procedures and would not make exceptions to those requirements.

In February 2025, in response to a communication from you advising that certain required product-specific and medical-specific information was not available for a subset of the claimants you represented, the Trust responded that all claims as to which proof of a qualifying product or medical forms supporting qualifying injury that were submitted by your firm were disallowed.

In March 2025, and again in September 2025, when we spoke outside the program room at NCBJ, the Trust has been consistent that failure by any claimant to submit all information required by the Plan Documents and Trust Submission Procedures would result in disallowance. Specifically, the Trust has repeatedly advised you that absence submission of a properly completed HIPPA form, claims would be considered deficient and would be disallowed.

Because the Trust is not required to provide notice of disallowance and to avoid depletion of the limited funds available for compensation of claimants, the Trust does not intend to provide individualized notice of disallowance. However, as you are aware, no claimant represented by your firm complied with all of the requirements of the Claims Submission Procedures.

The Trust continues to review and assess claims which complied with all of the requirements laid out in the Plan Documents and Trust Submission Procedures. The Mesh Trust will reach out to the eligible claimants and/or their representatives when the Mesh Trust is ready to make a distribution.

Best regards, Natalie

**Natalie D. Ramsey**
Robinson & Cole LLP
1201 North Market Street
Suite 1406
Wilmington, DE 19801
Direct 302.516.1702 | Fax 302.516.1699
nramsey@rc.com | Bio

**Robinson+Cole**

Boston | Hartford | New York | Washington, DC | Providence | Miami | Austin
Stamford | Wilmington | Philadelphia | Los Angeles | Albany | www.rc.com

**From:** Howard Magaliff <HMagaliff@R3MLaw.Com>
**Sent:** Tuesday, April 28, 2026 9:59 AM
**To:** Ramsey, Natalie D. <NRamsey@rc.com>; Gillen, Elizabeth <EGillen@rc.com>
**Cc:** Simon Morrison <smorrison@shine.com.au>
**Subject:** RE: Endo - AUS Mesh Claimants

**CAUTION:** **EXTERNAL EMAIL**

Good morning Natalie,

Hope you're well. It's been nearly a year since your last email, and we'd appreciate a status update on where the trustee is in the reconciliation process. I realize she has thousands of claims to review, but I would think by now she has reached some preliminary conclusions about the next steps.

I also left you a voicemail, and look forward to hearing from you.

Thanks very much.

R3M
R3M LAW, LLP
HOWARD P. MAGALIFF
437 Madison Avenue, 24th Floor ▪ New York, NY 10022
O 646.453.7851 ▪ D 646.453.7854 ▪ M 203.417.4070
F 212.913.9642 ▪ hmagaliff@r3mlaw.com ▪ r3mlaw.com

Chambers SPOTLIGHT NY 2026 R3M Law, LLP

**From:** Ramsey, Natalie D. <NRamsey@rc.com>
**Sent:** Wednesday, June 25, 2025 1:46 PM
**To:** Howard Magaliff <HMagaliff@R3MLaw.Com>; Gillen, Elizabeth <EGillen@rc.com>
**Cc:** Simon Morrison <smorrison@shine.com.au>
**Subject:** RE: Endo - AUS Mesh Claimants

Hi Howard,

Thank you for your below email.

The Trustee and her advisors continue to work diligently to reconcile claims, and, consistent with practice to date, will continue to report to the Court and Trust beneficiaries as required by the Trust documents. That said, there is no update at this time. The Trust reiterates its position that no claimant is entitled to receive one-off information or trust analysis that would place them at an advantage over another creditor.

The Trustee appreciates your client's patience as we continue our work and progress.

Kind regards, Natalie

**Natalie D. Ramsey**
Robinson & Cole LLP
1201 North Market Street
Suite 1406
Wilmington, DE 19801
Direct 302.516.1702 | Fax 302.516.1699
nramsey@rc.com | Bio | V-Card

**Robinson+Cole**

Boston | Hartford | New York | Washington, DC | Providence | Miami | Austin
Stamford | Wilmington | Philadelphia | Los Angeles | Albany | www.rc.com

**From:** Howard Magaliff <HMagaliff@R3MLaw.Com>
**Sent:** Wednesday, June 11, 2025 8:23 AM
**To:** Gillen, Elizabeth <EGillen@rc.com>; Ramsey, Natalie D. <NRamsey@rc.com>
**Cc:** Simon Morrison <smorrison@shine.com.au>
**Subject:** RE: Endo - AUS Mesh Claimants

**CAUTION:** **EXTERNAL EMAIL**

---

Thanks for the note. Hopefully she is enjoying her time away.

R3M
R3M LAW, LLP
HOWARD P. MAGALIFF
6 East 43rd Street, 21st Floor ▪ New York, NY 10017
O 646.453.7851 ▪ D 646.453.7854 ▪ M 203.417.4070
F 212.913.9642 ▪ hmagaliff@r3mlaw.com ▪ r3mlaw.com

**From:** Gillen, Elizabeth <EGillen@rc.com>
**Sent:** Wednesday, June 11, 2025 08:20
**To:** Howard Magaliff <HMagaliff@R3MLaw.Com>; Ramsey, Natalie D. <NRamsey@rc.com>
**Cc:** Simon Morrison <smorrison@shine.com.au>
**Subject:** RE: Endo - AUS Mesh Claimants

Mr. Magaliff,

On behalf of Natalie, we are in receipt of your email. Please be advised that Natalie is out of the country and will respond when she returns.

Thank you,

**Elizabeth A. Gillen** (she/her/hers)
**Executive Practice Assistant**
Robinson & Cole LLP
1650 Market Street
Suite 3030
Philadelphia, PA 19103
Direct 215.398.0571 | Fax 215.827.5982
egillen@rc.com

**Robinson+Cole**

Boston | Hartford | New York | Washington, DC | Providence | Miami
Stamford | Wilmington | Philadelphia | Los Angeles | Albany | www.rc.com

---

**From:** Howard Magaliff <HMagaliff@R3MLaw.Com>
**Sent:** Monday, June 9, 2025 12:22 PM
**To:** Ramsey, Natalie D. <NRamsey@rc.com>
**Cc:** Simon Morrison <smorrison@shine.com.au>
**Subject:** Endo - AUS Mesh Claimants

**CAUTION:** **EXTERNAL EMAIL**

---

Good afternoon Natalie. I'm checking in, as there has been no communication since we submitted all of the remaining documents in March. We'd appreciate an update.

Thanks very much.

R3M

R3M LAW, LLP

HOWARD P. MAGALIFF

6 East 43rd Street, 21st Floor ▪ New York, NY 10017

**O** 646.453.7851 ▪ **D** 646.453.7854 ▪ **M** 203.417.4070

**F** 212.913.9642 ▪ hmagaliff@r3mlaw.com ▪ r3mlaw.com

---

This transmittal may be a confidential R+C attorney-client communication or may otherwise be privileged or confidential. If it is not clear that you are the intended recipient, you are hereby notified that you have received this transmittal in error; any review, dissemination, distribution, or copying of this transmittal is strictly prohibited. If you suspect that you have received this communication in error, please notify us immediately by telephone at 1-860-275-8200, or e-mail at it-admin@rc.com, and immediately delete this message and all its attachments.

---

# **EXHIBIT 7**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re:<br><br>ENDO INTERNATIONAL plc, *et al.*,<br><br>Debtors.[1] | : | Chapter 11<br><br>Case No. 22-22549 (DSJ)<br>(Jointly Administered) |
| JODIE PHILIPSEN and JANICE SEYMOUR, on Behalf of Themselves and All Other Similarly Situated Australian Mesh Claimants,<br><br>Plaintiffs,<br><br>– against –<br><br>HEATHER BARLOW, as Trustee for the Mesh Trust,<br><br>Defendant. | : | Adv. Pro. No. 26-7068 |

**ORDER SCHEDULING PRELIMINARY INJUNCTION HEARING AND APPROVING NOTICE, AND GRANTING TEMPORARY RESTRAINING ORDER PENDING THE HEARING**

Upon the motion dated June 3, 2026 (the "Motion") of Jodie Philipsen ("Ms. Philipsen") and Janice Seymour ("Ms. Seymour" and, together with Ms. Philipsen, the "Plaintiffs"), on behalf of themselves and all other similarly situated Australian Mesh Claimants,[2] (i) pursuant to rule 65(a) of the Federal Rules of Civil Procedure (the "Rules"), rule 7065 of the

[1] The last four digits of Debtor Endo International plc's tax identification number are 3755. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

[2] Capitalized terms are defined in this Motion, the Plan or the Mesh Trust Agreement, as applicable.

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and section 105(a) of the Bankruptcy Code, for a preliminary injunction, enjoining the Mesh Trustee from making any distribution to the holders of allowed Eligible Mesh Claims pending resolution of the above-captioned adversary proceeding, (ii) pursuant to Rule 65(b), for a temporary restraining order ("TRO") pending the hearing on the preliminary injunction, and (iii) pursuant to Bankruptcy Rule 9007, for entry of an order scheduling a hearing, and upon the Declaration of Simon Morrison dated May 29, 2026 submitted in support of and attached as Exhibit 2 to the Motion and all exhibits, and notice of the Motion and request for entry of this Order, having been given by email where possible, and by overnight mail otherwise, to counsel for the Mesh Trustee, counsel for the Debtors, counsel for the GUC Trustee, counsel for the Official Committee of Unsecured Creditors, counsel for the non-Australian Mesh Claimants, the United States Trustee and all other parties in interest who filed a notice of appearance by first class mail or email, being good and sufficient notice, and no adverse interest appearing, and the Court having considered any responses submitted, and having determined that in the absence of immediate injunctive relief the Australian Mesh Claimants are likely to suffer irreparable harm, and that good cause exists for the relief in this Order, it is

**ORDERED** that a hearing will be held on ___________, 2026 at __:__ _.m. or as soon thereafter as the parties can be heard, before the Honorable David S. Jones, United States Bankruptcy Judge, to consider Plaintiffs' request for the entry of a preliminary injunction (the "Preliminary Injunction Hearing"). The hearing will be conducted virtually using Zoom for Government. Parties wishing to appear must register in advance using the Electronic Appearance portal located on the Court's website at *http://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl*; and it is further

**ORDERED** that responses or objections to the Motion and proposed preliminary injunction, if any, must be in writing, conform to the Federal Rules of Bankruptcy Procedure and be filed with the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at *www.nysb.uscourts.gov*, the official website for the Bankruptcy Court) and, by all other parties in interest, on a USB flash drive, in text-searchable Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (in either case, with a hard copy delivered to Chambers), and be served by first class mail or email upon (i) counsel for the Plaintiffs, R3M Law, LLP, 437 Madison Avenue, 24th Floor, New York, NY 10022, Attn: Howard P. Magaliff, Esq., *hmagaliff@r3mlaw.com*, (ii) the Office of the United States Trustee for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, Room 534, New York, NY 10004, Attn: Susan A. Arbeit, Esq. and Tara Tiantian, Esq., *susan.arbeit@udsdoj.gov* and *tara.tiantian@usdoj.gov*, and (iii) any person who filed a notice of appearance and request for service of papers in the case, **so as to be received by 5:00 p.m. on June __, 2026**; and it is further

**ORDERED** that, pursuant to Rule 65(b), Bankruptcy Rule 7065 and 11 U.S.C. § 105(a), pending the Preliminary Injunction Hearing, the Mesh Trustee and all persons in active concert with her are hereby temporarily enjoined from making any distribution to the holders of allowed Eligible Mesh Claims pending resolution of the above-captioned adversary proceeding; and it is further

**ORDERED** that that service of a copy of the Motion, having been given to counsel for the Mesh Trustee, counsel for the Debtors, counsel for the GUC Trustee, counsel for the Official Committee of Unsecured Creditors, counsel for the non-Australian Mesh Claimants and

the United States Trustee by overnight mail or email, and to all other parties in interest who filed a notice of appearance by first class mail or email (the "Notice Parties") is good and sufficient notice of the relief requested; and it is further

**ORDERED** that service of a copy of this Order shall be given to the Notice Parties in the manner set forth in the preceding decretal paragraph on or before June __, 2026, which will be good and sufficient notice of the Preliminary Injunction Hearing.

Dated: New York, New York
June __, 2026

________________________________
Hon. David S. Jones
United States Bankruptcy Judge