R3M LAW, LLP
437 Madison Avenue, 24th Floor
New York, NY 10017
646.453.7851
Howard P. Magaliff
Taylor M. Haga

*Attorneys for Jodie Philipsen and Janice Seymour, on behalf of themselves and all other similarly situated Australian Mesh Claimants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ENDO INTERNATIONAL plc, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-22549 (DSJ)<br><br>(Jointly Administered) |
| JODIE PHILIPSEN and JANICE SEYMOUR, on Behalf of Themselves and All Other Similarly Situated Australian Mesh Claimants,<br><br>Plaintiffs,<br><br>– against –<br><br>HEATHER BARLOW, as Trustee for the Endo Mesh Trust, U.S. BANK TRUST NATIONAL ASSOCIATION as the Delaware Trustee for the Mesh Trust, and the ENDO MESH TRUST,<br><br>Defendants. | Adv. Pro. No. 26-7068 |

**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

[1] The last four digits of Debtor Endo International plc's tax identification number are 3755. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

Jodie Philipsen ("Ms. Philipsen") and Janice Seymour ("Ms. Seymour" and, together with Ms. Philipsen, the "Plaintiffs"), on behalf of themselves and all other similarly situated Australian Mesh Claimants,[2] by their attorneys R3M Law, LLP, as and for their complaint against Heather Barlow, as Trustee for the Endo Mesh Trust ("Mesh Trustee"), U.S. Bank Trust National Association, as the Delaware Trustee for the Mesh Trust ("U.S. Bank") and the Endo Mesh Trust (the "Mesh Trust" and together with the Mesh Trustee and U.S. Bank, the "Defendants"), alleges the following upon knowledge as to their own acts and otherwise upon information and belief:

## INTRODUCTION

1. Plaintiffs bring this action (i) pursuant to Rule 7001(9) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for a declaratory judgment that HIPAA Releases are not applicable to or required for the Australian Mesh Claims, (ii) pursuant to Bankruptcy Rule 7001(9), a declaratory judgment that the Mesh Trustee's disallowance of more than 6,000 Australian Mesh Claims because the Australian Mesh Claimants did not submit HIPAA Releases is null and void, and of no effect, and (iii) pursuant to Rule 65(a) of the Federal Rules of Civil Procedure (the "Rules") and Bankruptcy Rule 7065 and section 105(a) of the Bankruptcy Code, a judgment permanently enjoining the Mesh Trustee from making any distribution to the holders of allowed Mesh Claims that do not include Australian Mesh Claims that have been allowed without consideration of HIPAA Releases.

[2] Capitalized terms are defined in this Complaint.

## THE PARTIES

2. Plaintiffs are the representative lead plaintiffs in a class action suit against Astora Women's Health, LLC ("Astora"), a debtor, that was pending in the Federal Court of Australia on the filing date of the Debtors' petitions, and are creditors with filed claims.

3. Heather Barlow is the trustee for the Endo Mesh Trust under the Endo Mesh Trust Agreement (the "Mesh Trust Agreement") formed pursuant to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International plc and its Affiliated Debtors* (as amended and supplemented, the "Plan") [ECF doc. 3849], as confirmed by the Court by Order dated March 22, 2024 (the "Confirmation Order") [ECF doc. 3960].

4. U.S. Bank is the Delaware Mesh Trustee for the Endo Mesh Trust. U.S. Bank is named as a nominal defendant because it is a party to the Mesh Trust Agreement. Plaintiffs do not seek relief against U.S. Bank.

5. The Mesh Trust is the entity formed under the Mesh Trust Agreement to resolve and make distributions on account of all Eligible Mesh Claims, as defined therein.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and Section 7.15 of the Mesh Trust Agreement.

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). If any of the claims asserted in this adversary proceeding are determined to be non-core, Plaintiffs to the entry of final judgment by the Bankruptcy Court.

9. If the Court determines that the claims asserted by Plaintiffs constitute "disputes" within the meaning of section 7.14 of the Mesh Trust Agreement, Plaintiffs consent to submit to the ADR Process as set forth therein.

## CLASS ALLEGATIONS

10. Plaintiffs are the representatives of approximately 6,000 Australian women who suffered similar injuries, and are creditors of Astora Women's Health, LLC ("Astora"), one of the debtors.

11. This action raises a single legal question that is common to all of the Australian Mesh Claimants.

12. It is impracticable to join the thousands of Australian Mesh Claimants as parties, or to commence thousands of individual actions seeking the identical declaratory relief.

13. The Court's determination of the legal question will be dispositive for all of the Australian Mesh Claimants. The question of law common to the class members predominates over any questions affecting only an individual Australian Mesh Claimant.

14. Under the circumstances, the Plaintiffs as representative parties will fairly and adequately protect the interests of the class.

15. The Mesh Trustee has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## GENERAL ALLEGATIONS

### A. The Basis for Plaintiffs' Claims

8. On July 5, 2006, Ms. Philipsen had surgery to address her pelvic organ prolapse condition, during which Perigee IntePro and Apogee IntePro implants (each a "Mesh

Implant”) were implanted through the vagina into her pelvic region. Between 2008 and 2013, Ms. Philipsen experienced complications caused by the Mesh Implants, which required her to undergo multiple additional surgeries and a vaginal hysterectomy.

9. On October 9, 2007, Ms. Seymour similarly had surgery to address her stress urinary incontinence condition, during which a MONARC Subfascial Hammock System (a “Sling Implant”, and together with the Mesh Implants, the “Implants”) was implanted through the vagina into her pelvic region. Between 2007 and 2017, Ms. Seymour also experienced complications caused by the Sling Implant, requiring multiple surgeries to alleviate the complications.

10. The Plaintiffs suffered complications caused by the physical, mechanical, chemical, and surface characteristics of the Implants’ non-absorbable polypropylene and the fact that they are implanted through the vagina.

**B. Procedural History of the Australian Class Action**

11. On January 16, 2018 Ms. Philipsen commenced a representative proceeding in the Federal Court of Australia (the “Class Action”), on behalf of herself and other women who suffered from complications caused by Implants designed and made by American Medical Systems, LLC (“AMS”), a predecessor in interest to Astora. On July 31, 2018, Ms. Seymour was joined to the Class Action as the second lead applicant.

12. On June 25, 2019, AMS filed a Defence in response to the Lead Plaintiffs’ Second Further Amended Originating Application and Statement of Claim. However, on December 4, 2020, AMS’s solicitors informed Plaintiffs’ attorneys, Shine Lawyers Pty Ltd. (“Shine”), that (a) AMS’s liabilities had been transferred to Astora before the commencement of the Class Action, (b) the entity AMS was dissolved in June 2018, and (c) Astora should be

substituted as Respondent in the Class Action. The Plaintiffs complied, and on March 1, 2021 they filed the Third Further Amended Originating Application and Statement of Claim. Subsequently, Astora filed a Defence of May 21, 2021.

13. On April 14, 2021, Plaintiffs filed their final Amended Originating Application, in which they further refined the common questions of law and fact relevant to the class and subclass members. To qualify as a class member, the woman must have received an Implant and suffered a pleaded complication that was caused by the Implant.

### C. <u>The Motion for Class Certification and Consolidated Claim</u>

14. On June 1, 2023, Plaintiffs filed a motion in this Court for an order certifying the class of Australian Mesh Claimants and authorizing the filing of a class proof of claim (the "<u>Class Claim Motion</u>") [ECF doc. 2138].

15. Following objections to the Class Claim Motion filed by, *inter alia*, the Debtors, the Official Committee of Unsecured Creditors and the Official Committee of Opioid Creditors, Plaintiffs agreed to file a single consolidated claim on behalf of the Australian Mesh Claimants. *See Stipulation By and Among Jodie Philipsen and Janice Seymour, The Official Committee of Unsecured Creditors, The Official Committee f Opioid Claimants, and the Debtors Resolving the Class Claim Motion* (the "<u>Claims Stipulation</u>") [ECF doc. 2246].

16. Pursuant to the Claims Stipulation, the Australian Mesh Claimants filed a consolidated proof of claim and submitted required supporting documents and medical records (the "<u>Australian Mesh Consolidated Claim</u>").

17. The Australian Mesh Claimants did not, and cannot, submit HIPAA Releases.

**D. <u>The Mesh Trust Agreement and Scheduled Claims Process</u>**

18. On April 23, 2024, the Debtors filed the *Seventh Plan Supplement* (the "<u>Plan Supplement</u>"). [ECF doc. 4213]. The final execution version of the Mesh Trust Agreement is at pages 477 – 543 of the Plan Supplement.

19. The Mesh Trust Agreement defines the "Mesh Claims Process" at section 1.2.12 as "the schedule of procedures for determination of Allowed Amounts of Eligible Mesh Claims" attached as Exhibit 1 to the Mesh Trust Agreement. The Mesh Claims Process is at pages 510 – 543 of the Plan Supplement.

20. Section 4.3(a) of the Mesh Trust Agreement states: "The Mesh Claims Process shall set forth the process for determining the Allowed Claim Amount of each Eligible Mesh Claim."

21. Section 4.3(b) of the Mesh Trust Agreement states: "The Mesh Claims Process will be incorporated into and shall become part of this Mesh Trust Agreement."

22. Section 3.2(b) of the Mesh Claims Process, entitled "General Criteria for Allowed Mesh Claims," provides in part: "To establish an Allowed Mesh Claim in accordance with this Mesh Claims Process, an Eligible Mesh Claimant must satisfy all of the following criteria: … 3.2.3 Complete, sign and submit the HIPAA Release, **if applicable**; …"

**<u>FIRST CLAIM FOR RELIEF</u>**
**(Declaratory Judgment Pursuant to Bankruptcy Rule 7001(9) That HIPAA Releases Are Not Applicable to Australian Mesh Claimants)**

23. Plaintiffs incorporate each of the foregoing paragraphs as if fully set forth herein.

24. The Mesh Trust Agreement provides that the purpose of providing a HIPAA Release is to "enable the Mesh Trust to directly obtain the Mesh Claimant's medical

records for evaluation in accordance with this Mesh Trust Agreement." *See* Mesh Trust Agreement, § 4.21(f) ("The Mesh Trust may request a Mesh Claimant to execute a HIPAA Release to enable the Mesh Trust to directly obtain the Mesh Claimant's medical records for evaluation in accordance with this Mesh Trust Agreement.").

25. A HIPAA Release serves a purpose with respect to medical records maintained in the United States because HIPAA applies in the United States and, therefore, a HIPAA Release is necessary to directly obtain such records. See 45 C.F.R. § 164.502 ("A covered entity or business associate may not use or disclose protected health information, except as permitted or required by this subpart or by subpart C of part 160 of this subchapter.").

26. HIPAA does not apply extraterritorially.

27. A HIPAA Release does not permit or affect the Mesh Trustee's ability to directly obtain medical records maintained solely outside the United States. The Australian Mesh Claimants' medical records are maintained solely outside the United States, and HIPAA does not apply to protect the disclosure of such records.

28. The disclosure and production of medical records maintained solely outside the United States is governed by foreign law.

29. Because the Medical Records of the Australian Mesh Claimants were maintained solely in Australia, Australian law governs their disclosure and production. Under Australian law – specifically, the Privacy Act 1988 (the "Act") – organizations to which the Act applies are permitted to collect, use and disclose personal health information only with the individual's consent or where a "permitted general situation exists." *See* Act, Schedule 1, APP 6.2(c)). A permitted general situation includes where the use or disclosure is "reasonably necessary for establishing, exercising or defending a legal or equitable claim." *See* Act § 16A.

30. In compliance with Australian law, the Australian Mesh Claimants authorized the release of their medical records to their attorneys in Australia, Shine Lawyers ("Shine").

31. The Australian Mesh Claimants, through Shine, provided all available medical records required for purposes of administering the Mesh Claims Trust and facilitating the Mesh Trustee's evaluation of their claims.

32. Based upon the foregoing, Plaintiffs are entitled to a declaratory judgment that a HIPAA Release is not applicable to the Australian Mesh Claims and is not required for the Mesh Trustee to evaluate those claims.

**SECOND CLAIM FOR RELIEF**
**(Declaratory Judgment Pursuant to Bankruptcy Rule 7001(9) That The Mesh Trustee's Disallowance of the Australian Mesh Claims For Failure to Provide HIPAA Releases is Null and Void)**

33. Plaintiffs incorporate each of the foregoing paragraphs as if fully set forth herein.

34. On March 19, 2025, the following email exchange ensued between counsel for the Australian Mesh Claimants and the Mesh Trustee:

> R3M to Robinson + Cole:
>
> We had a productive discussion with Justin Hughes at Stretto, and have addressed all of the noted deficiencies in Stretto's chart, but there is one clarification. We did not supply HIPPA forms for the Australian claimants because they are not subject to it and have no idea even what HIPPA is. If this is something that Heather thinks is nonetheless mandatory for some reason, then I'd like to discuss. It is not possible to get thousands of these forms signed by tomorrow. This is one of the reasons I wrote to you several weeks ago asking to speak about the deficiencies, which you declined to do at the time.
>
> Robinson + Cole to R3M:
>
> As far back as May 2024, the Trust has been consistent that it would enforce the requirements of the Plan Documents and Trust

> Submission Procedures and would not make exceptions to those requirements.
>
> In February 2025, in response to a communication from you advising that certain required product-specific and medical-specific information was not available for a subset of the claimants you represented, the Trust responded that all claims as to which proof of a qualifying product or medical forms supporting qualifying injury that were submitted by your firm were disallowed.
>
> [T]he Trust has been very clear throughout that each and every document subject to a deficiency notice must be submitted by the deadline of March 20, 2025. **Without a completed HIPPA form, the claims will be considered deficient and will be disallowed. We do not believe a dialogue on this will be productive.** (Emphasis added).
>
> R3M to Robinson + Cole:
>
> Further to my email yesterday, there is no Australian equivalent to the HIPAA form. Healthcare providers will typically require an authority signed by the patient if someone (*e.g.* their lawyer) wants to obtain their medical records. Under the *Privacy Act 1988* (the Act), organizations to whom the Act applies (*e.g.* Shine) are permitted to collect, use and disclose personal information with the individual's consent or where a "*permitted general situation exists"* (see the Act, Schedule 1, APP 6.2(c)). A permitted general situation includes where the use or disclosure is "*Reasonably necessary for establishing, exercising or defending a legal or equitable claim*" (§ 16A of the Act). This has already been done. It is how Shine was able to send records in the first place to establish the claims.
>
> We understand the Trust's position, but this is literally elevating the form over substance. HIPAA is simply inapplicable. **The Trust has all of the records we have obtained and the authority to look at them.** The claimants should not be penalized for the failure to deliver the form. (Emphasis added).

35. Subsequently, on June 9, 2025, following the submission of remaining documents to support the claims, counsel for the Australian Mesh Claimants emailed the Mesh Trustee's counsel again to request an update. On June 5, 2025 counsel responded:

> Thank you for your below email.
>
> The Trustee and her advisors continue to work diligently to reconcile claims, and, consistent with practice to date, will continue to report to the Court and Trust beneficiaries as required by the Trust documents. That said, there is no update at this time. The Trust reiterates its position that no claimant is entitled to receive one-off information or trust analysis that would place them at an advantage over another creditor.
>
> The Trustee appreciates your client's patience as we continue our work and progress.

36. On April 28, 2026, after more than a year during which the Australian Mesh Claimants heard nothing from the Mesh Trustee, counsel for the Australian Mesh Claimants emailed counsel for the Mesh Trustee to ask about that status of the Mesh Trustee's review of the Australian Mesh Claims.

37. On May 1, 2026, counsel for the Mesh Trustee replied and advised that all of the Australian Mesh Claimants' claims were disallowed because no HIPAA Releases were provided:

> As far back as May 2024, the Trust has been consistent that it would enforce the requirements of the Plan Documents and Trust Submission Procedures and would not make exceptions to those requirements.
>
> In February 2025, in response to a communication from you advising that certain required product-specific and medical-specific information was not available for a subset of the claimants you represented, the Trust responded that all claims as to which proof of a qualifying product or medical forms supporting qualifying injury that were submitted by your firm were disallowed.
>
> In March 2025, and again in September 2025, when we spoke outside the program room at NCBJ, the Trust has been consistent that failure by any claimant to submit all information required by the Plan Documents and Trust Submission Procedures would result in disallowance. Specifically, the Trust has repeatedly advised you that absence submission of a properly completed HIPPA form, claims would be considered deficient and would be disallowed.

> Because the Trust is not required to provide notice of disallowance and to avoid depletion of the limited funds available for compensation of claimants, the Trust does not intend to provide individualized notice of disallowance. However, as you are aware, no claimant represented by your firm complied with all of the requirements of the Claims Submission Procedures.
>
> The Trust continues to review and assess claims which complied with all of the requirements laid out in the Plan Documents and Trust Submission Procedures. The Mesh Trust will reach out to the eligible claimants and/or their representatives when the Mesh Trust is ready to make a distribution.

38. Because (i) HIPAA is inapplicable to the Australian Mesh Claims, (ii) the Australian Mesh Claimants submitted all available medical records, and (iii) no purpose would be served by requiring the Australian Mesh Claimants to submit HIPAA Releases, the Mesh Trustee's disallowance of the Australian Mesh Claims for failure to submit HIPAA Releases was arbitrary and capricious.

39. Based upon the foregoing, Plaintiffs are entitled to a declaratory judgment that the disallowance of the Australian Mesh Claims for failure to provide HIPAA Releases is null and void, and of no effect.

**<u>THIRD CLAIM FOR RELIEF</u>**
**(Permanent Injunction Against Distributions to Mesh Claimants That Exclude the Australian Mesh Claimants Based Upon Disallowance for Failure to Provide HIPAA Releases)**

40. Plaintiffs incorporate each of the foregoing paragraphs as if fully set forth herein.

41. To the extent that the Mesh Trustee intends to make distributions to the holders of allowed Eligible Mesh Claims that exclude the Australian Mesh Claimants utilizing available insurance proceeds and other assets of the Mesh Trust prior to the adjudication of this

complaint, the Australian Mesh Claimants will be irreparably injured by the dissipation of the sole assets available to pay all allowed Mesh Claims.

42. Based on the foregoing, Plaintiffs are entitled to a judgment permanently enjoining the Mesh Trustee from making distributions to the holders of allowed Eligible Mesh Claims prior to a determination of whether Australian Mesh Claims should be allowed or disallowed without consideration of the absence of HIPAA Releases.

**WHEREFORE**, Plaintiffs requests the entry of judgment as follows:

(a) On the first claim for relief, a declaratory judgment that HIPAA Releases are not applicable or required for the Australian Mesh Claims;

(b) On the second claim for relief, a declaratory judgment that the Mesh Trustee's disallowance of the Australian Mesh Claims solely for the failure to provide HIPPA Releases is null and void, and of no effect;

(c) On the third claim for relief, a permanent injunction prohibiting the Mesh Trustee from making distributions to the holders of allowed Eligible Mesh Claims prior to a determination of whether Australian Mesh Claims should be allowed or disallowed without consideration of the absence of HIPAA Releases;

(d) Costs and attorney fees; and

**[concluded on next page]**

(e) Such other and further relief as is necessary and proper.

Dated: New York, New York
June 12, 2026

R3M LAW, LLP
Attorneys for the Plaintiffs
By:

/s/ Howard P. Magaliff
HOWARD P. MAGALIFF
437 Madison Avenue, 24th Floor
New York, NY 10022
646.453.7851
*hmagaliff@r3mlaw.com*