# **EXHIBIT 1**

DECLARATION OF NATALIE D. RAMSEY

ROBINSON + COLE LLP
666 Third Avenue, 20th Floor
New York, New York 10017
212-451-2900 (phone)
212-451-2999 (facsimile)

*Counsel to Heather Barlow in her capacity as Trustee of the Endo Mesh Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| ENDO INTERNATIONAL, plc, *et al.*[1], | : | Case No. 22-22549 (DSJ) |
| Debtors | : | |
| JODIE PHILIPSEN and JANICE SEYMOUR On Behalf of Themselves and All Other Similarly Situated Australian Mesh Claimants, | : | |
| Plaintiffs, | : | Adv. Pro. No. 26-07068 |
| -against- | : | |
| HEATHER BARLOW, as Trustee for the Mesh Trust, U.S. BANK TRUST NATIONAL ASSOCIATION as the Delaware Trustee for the Mesh Trust, and the ENDO MESH TRUST[2] | : | |

**DECLARATION OF NATALIE D. RAMSEY IN SUPPORT OF OBJECTION TO MOTION OF JODIE PHILIPSEN AND JANICE SEYMOUR FOR A PRELIMINARY INJUNCTION, FOR ENTRY OF AN ORDER SCHEDULING A HEARING, AND FOR A TRO ON NOTICE PENDING THE HEARING**

[1] The last four digits of Debtor Endo International plc's tax identification number are 3755. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

[2] The caption reflects the caption of the Amended Complaint filed by Movants on June 12, 2026. Ms. Barlow, in her capacity as Mesh Trustee, was named in the Original Complaint. After being advised that pursuant to the Mesh Trust Agreement that it is the Mesh Trust and not the Mesh Trustee who is to be named, the Amended Complaint was filed. A revised version of the PI Motion was not filed.

I, Natalie D. Ramsey, hereby declare as follows:

1. I am over eighteen years of age and believe in the obligations of an oath.

2. I am a partner at Robinson & Cole LLP and counsel to the Mesh Trustee in the above-captioned matter.

3. I submit this Declaration based upon my personal knowledge of the facts set forth herein, which I am filing in support of the Objection filed on behalf of the Mesh Trust to Plaintiffs' Motion for Preliminary Injunction (the "Objection") [3] to which this declaration is attached.

4. Attached as Exhibit A is a true and accurate copy of the HIPAA Release obtained from the Court's docket maintained in the Debtors' cases at D.I. 4213.

5. Attached as Exhibit B is a true and accurate copy of the July 18 Correspondence from Natalie D. Ramsey to Howard P. Magaliff dated July 18, 2024.

6. Attached as Exhibit C is a true and accurate copy of the Legend.

7. Attached as Exhibit D is a true and accurate copy of the Letter from Natalie D. Ramsey to Howard P. Magaliff dated June 9, 2026.

8. Attached as Exhibit E is a true and accurate copy of correspondence from Howard P. Magaliff to Natalie D. Ramsey dated June 12, 2026.

9. Attached as Exhibit F is a true and accurate copy of correspondence from Natalie D. Ramsey to Howard Magaliff dated May 8, 2024.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of June, 2026.

*/s/ Natalie D. Ramsey*
Natalie D. Ramsey

[3] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Objection.

# **Exhibit A**

**HIPAA RELEASE FORM FOR MESH CLAIMS**

**AUTHORIZATION TO DISCLOSE HEALTH INFORMATION**

**Claimant Name:** **Date:**

**Date of Birth:** **Soc. Sec. No.**

1. The following individuals or organizations are authorized to disclose my protected health and insurance records to the parties specified below in section #4:

   Note: Please list the names of your medical care providers and your health insurance providers that may have records relevant to the resolution of your Mesh Claim.[3] <u>If you are unsure of the exact legal name of your medical providers and health insurance providers, you can leave this blank, and we will complete it for you with the understanding that you authorize all relevant parties:</u>

   ____________________________________________________________
   ____________________________________________________________
   ____________________________________________________________
   ____________________________________________________________
   ____________________________________________________________
   ____________________________________________________________
   ____________________________________________________________

2. The type and amount of information to be used or discloses is as follows:

The entire protected medical and insurance record, including but not limited to: any and all medical records, mental health records, psychological records, psychiatric records, problem lists, medication lists, lists of allergies, immunization records, history and physicals, discharge summaries, laboratory results, x-ray and imaging reports, medical images of any kind, video tapes, photographs, consultation reports, correspondence, itemized invoices and billing information, and information pertaining to Medicaid or Medicare eligibility and all payments made by those agencies, for the following dates:

Note: List the date range for which the medical providers and insurance companies above may have records relevant to the resolution of your Mesh Claim. <u>If you are unsure of the exact dates, then leave this blank, and we will complete this section for you with the understanding that you authorize all relevant date ranges.</u>

Dates of Services - From:______________________ To: _________________________

3. I understand that the information in my health records may include information relating to sexually transmitted disease, acquired immunodeficiency syndrome (AIDS), or human

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Mesh Trust Agreement, the Plan, the Confirmation Order, or the GUC Trust Documents.

immunodeficiency virus (HIV). It may also include information about behavioral or mental health services, as well as treatment for alcohol and drug abuse.

4. The health and insurance information may be disclosed to and used by the following individual and/or organization:

    a. Mesh Trust;

    b. Heather Barlow, as the Trustee and Claims Administrator of the Mesh Trust;

    c. Any professionals engaged by the Mesh Trust to perform such tasks; and

    d. Matthew Dundon, as the Trustee of the GUC Trust, and any professionals engaged by the GUC Trust to perform such tasks;

5. I understand I have the right to revoke this authorization at any time. I understand if I revoke this authorization, I must do so in writing and present my written revocation to the health information management department. I understand the revocation will not apply to information that has already been released in response to this authorization. I understand the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy. Unless otherwise revoked, this authorization will expire 10 years after the date that I sign it.

6. I understand that authorizing the disclosure of this health information is voluntary. I can refuse to sign this authorization and forego a recovery under the Mesh Trust Agreement. I understand that no organization may condition treatment, payment, enrollment, or eligibility for benefits on my signing of this authorization. I understand I may inspect or copy the information to be used or disclosed, as provided in CFR 1634.524. I understand any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules or HIPAA. If I have questions about disclosure of my health information, I can contact the parties listed above in section #4.

______________________________________ ________________________
Patient or Legal Representative Date

__________________________________________
Relationship to Patient (If signed by Legal Representative)

# **Exhibit B**

**From:** Howard Magaliff <HMagaliff@R3MLaw.Com>
**Sent:** Thursday, July 18, 2024 10:11 PM
**To:** Rachael Ringer
**Cc:** Ramsey, Natalie D.; Email; Craig Allsopp; Kate Gough; Dan Mori
**Subject:** Australian Mesh Claimants - Medical Records

**Importance:** High

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

**CAUTION: EXTERNAL EMAIL**

---

Rachael,

Further to our conversations, we want to share with you and Natalie some information on the Australian process for obtaining medical records in class litigation and the reasons why the current process to be undertaken by the GUC and Mesh Trustees poses significant hurdles.

It appears that the Mesh Trustee is approaching the assessment of claims based on the assumption that the claimants have been through the ordinary process for personal injury claims in the United States: specifically, that the plaintiffs' lawyers have already requested, gathered and reviewed their clients' medical evidence at an early stage in the litigation. However, in the Australian class action context, the only cases for which medical records are obtained are those of (1) the lead plaintiff(s) (because it is only their specific claims that must be determined at the initial trial, along with the common questions of all group members), and (2) a representative sample of group members who may be identified among the wider registered class for class-wide damages assessment during settlement negotiations.

In October 2021, Shine undertook a Court-ordered registration process for women who believed they received a pelvic mesh implant from either Ethicon Sarl, Boston Scientific, or Astora (formerly AMS) for settlement negotiation purposes. Around this time, Shine was notified of the potential bankruptcy of Astora. Shine continued the registration process; however, apart from a small representative sample which had been gathered earlier, Shine did not progress to verify the claims because up to that point no settlement with Astora had been reached and given the potential bankruptcy there was substantial risk that the time and costs involved might not be recovered. The information that was collected was:

- Contact details;
- Implant details (n.b., approx. 750 registrants are presently not verified as to whether they received an Astora implant); and
- Self-reported further surgeries, complications and further treatments.

In connection with confirmation of Endo's plan that established the various trusts and in anticipation of the need to submit more detailed information to support the claims,, Shine has communicated with its 6,000+ Astora group members and sent a detailed questionnaire with a declaration for claimants to sign as to the information's veracity, and trained a large number of staff in answering calls and responding to emails regarding the questionnaire. The completion rate of the questionnaire is currently sitting at 74%. Approximately 2,260 registrants have indicated they had additional surgeries and approximately 4,700 registrants have indicated they had further treatments. No medical records were requested on the basis of time constraints and because Shine reasonably believed based on the many discussions we had prior to confirmation that the specifics and veracity of the medical records could be gathered and reviewed in a fast-track process under the oversight of the Federal Court of Australia if the Foreign Allocation process was adopted by the Mesh Trustee. As we have discussed many times, this seemed to be the most efficient method to take care of the claims at the least administrative cost to the trust. Unfortunately, and for reasons that were never adequately explained (perhaps due to attorney-client privilege between Natalie and Heather), the Mesh Trustee decided

to look at each of our more than 6,000 claims individually. The TSF, and the GUC and Mesh Trustees are thus requiring that medical records to support each individual claim be supplied by the submission deadline.

To date, Shine has the medical records for several hundred of the claimants, which we will begin to send and continue to produce on a rolling basis to the extent possible. However, to put this in perspective, the cost for Shine to gather the remaining records to enable them to continue the confirmation of implant, further surgeries and treatments is very likely to exceed any ultimate recoveries. The plan of how this will be completed and approximate associated costs are:

1. The costs of confirming the implants of the 750 "unconfirmed registrants": AUS $665,250 (USD$448,145)
2. Request and gather medical records for additional surgeries (n = 2260)/treatments (n = 4760): AUS $4,905,320 (USD $3,304,463)
3. (If necessary) Additional cost for review by Shine Lawyers of the medical records/preparation of chronologies etc: AUS $13,394,480 (USD $9,023,175).

The total, depending on whether Shine reviews the 6,000+ records or if they can be sent to the Trustee for review:

- With Shine review: AUS $18,965,050 (USD $12,775,783 total or USD $2,129.30 per file)
- Without Shine review: AUS $5,570,570 (USD $3,752,608 or USD $625 per file)

Although these steps can be completed simultaneously, in addition to high cost the expected time frame for completing any/all of them is 6 – 12 months, based on Shine's extensive experience making record requests to what are predominately under-resourced public hospitals and government bodies, and who have long record request wait times. Obviously, this does not comport with the established timeline in this case, nor can it. Even if Shine had started this process the day the plan was confirmed we would not have all of the records.

There are a few of possible options that can be considered, each of which would be acceptable to us and, we think, fair to all of the mesh claimants both domestic and foreign.

1. In Australia, the class claims are resolved by extrapolating from the medical and other data of the representative plaintiffs, based upon severity cohorts. This is because, as noted, the litigation in Australia had not reached the point where it was necessary for Shine to obtain full medical records for every claimant. For purposes of this discussion, we accept the various tiers of claims set out in the procedures. Shine could prepare and provide all medical records which they do have including the 430 sample group members records (which are statistically representative of the broader group). The Mesh Trustee could slot each of the 6,000+ claimants into a tier and assign a claim value for distribution purposes based on the representative sampling.

2. We can supply all of the information required by the TFS for each claimant and the medical records that Shine has and will be able to obtain by the submission deadline, and will continue to gather and produce records as quickly as possible. However, we understand that once the submission deadline passes the Mesh Trustee can summarily disallow claims that do not have medical records. We think this would be extremely unfair and prejudicial to our claimants. We have been told that there are a total of 1,758 domestic mesh claims and 7,032 foreign mesh claims, 6,942 of which are the Australian claims (we acknowledge that several hundred of these may not pass the initial threshold to be *prima facie* valid) that have been filed against the debtors. Our clients represent 78.98% in number of the total filed claims. We would therefore ask that the Mesh Trustee not disallow claims so long as Shine commits to produce medical records as needed.

3. A third option is to adopt the Foreign Allocation, and ask the Mesh Trustee to reconsider in light of the above.

We are mindful of and appreciate the GUC Trustee's need for medical records to utilize in his negotiations with the insurers. However, Shine will not be able to provide these records for all of the Australian claimants by the deadline. You will have some of them, certainly, to use in the negotiations and Shine will do everything possible to provide the greatest amount of data. We are aligned with the desire of the GUC and Mesh Trustees to obtain the greatest recovery for all of the claimants and creditors, and want to find a fair way to balance their need for information with our clients' need for some compensation for the injuries they have suffered. We are also mindful of Tobi Milrood's insistence that he represents domestic claimants whose claims are more than sufficient to overcome any SIR issues to unlock the insurance proceeds without any of the foreign mesh claims.

I am leaving on Friday for vacation and will be back in the office on August 5. I urge you to speak with Simon and his colleagues at Shine as soon as possible so we can move forward constructively.

Thanks.

R3M

R3M LAW, LLP

HOWARD P. MAGALIFF

6 East 43rd Street, 21st Floor ▪ New York, NY 10017

**O** 646.453.7851 ▪ **D** 646.453.7854 ▪ **M** 203.417.4070

**F** 212.913.9642 ▪ hmagaliff@r3mlaw.com ▪ r3mlaw.com

***Please note our new address.***

# **Exhibit C**

## DEFICIENCY DESCRIPTIONS

**DEFICIENCY CODE: TYP**

**Endo Trust Submission Form**

Section II: Identification of Claims

You either:

(a) did not certify that you are a holder of a General Unsecured Claim listed on the Debtors' schedule of assets and liabilities *or* that you have completed and submitted a General Unsecured Proof of Claim in accordance with the Bar Date Order (while providing the Claim Number provided to you by the Debtors' claim agent (Kroll), *or*

(b) did not adequately identify the type of Eligible General Unsecured Claim that you are submitting.

---

**DEFICIENCY CODE: TAX**

**Endo Trust Submission Form**

Tax Documentation Required

You did not provide a U.S. tax Form W-9, for U.S. persons, or an appropriate U.S. tax Form W-8, for non-U.S. persons.

---

**DEFICIENCY CODE: WIR**

**Endo Trust Submission Form**

Section IV: Wire Information

You did not provide wire information for cash payments.

---

**DEFICIENCY CODE: SIG**

**Endo Trust Submission Form**

Section VI: Certification

You did not complete and/or sign the Certification section of the GUC Trust Submission Form.

---

**DEFICIENCY CODE: CLM**

**Mesh Trust Form**

Part One: Personal Information of Mesh Claimant

You did not provide complete personal information about the Mesh Claimant, specifically the name, date of birth, address and Taxpayer ID.

---

**DEFICIENCY CODE: EDP**

**Mesh Trust Form**

Part Three: Implantation of an Eligible Debtor Product

Note: minimal compensable use requires *treatment* for a condition or symptom attributed to implantation of an Eligible Debtor Product.

You did not provide complete information about the Eligible Debtor Product(s), including the name of the Eligible Debtor Product(s) and Date of Implantation, at minimum.

---

**DEFICIENCY CODE: HIP**

**Mesh Trust Form**

Part Three: Implantation of an Eligible Debtor Product

You did not submit a completed HIPAA Release Form (all sections are required to be completed except Questions 1 and 2, which are optional).

---

**DEFICIENCY CODE: REC**

**Mesh Trust Form**

Part Three/Four: Implantation of an Eligible Debtor Product/Mesh Claimant Injuries

You did not provide eligible identification and/or additional evidence (*i.e.* medical records) to establish that you were implanted with an Eligible Debtor Product and to demonstrate the treatment of one of the qualifying conditions, as required.

---

**DEFICIENCY CODE: LNS**

**Mesh Trust Form**

Part Five: Medical Liens

You did not indicate whether any insurance company paid for medical treatment for the Mesh-related injuries that gave rise to your Mesh Claim.

---

# Exhibit D

Robinson+Cole

NATALIE D. RAMSEY

1201 North Market Street, Suite 1406
Wilmington, DE 19801
Main (302) 516-1700
Fax (302) 516-1699
nramsey@rc.com
Direct (302) 516-1702
Cell (302) 354-9593

Also admitted in New York
and Pennsylvania

***Via Email and First Class Mail***

June 9, 2026

Howard P. Magaliff, Esquire
R3M Law, LLP
6 E 43rd Street, 21st Floor
New York, NY 10017

Re: Demand for Withdrawal with Prejudice of Adversary Proceeding 26-7068 Filed in Bankruptcy Court for the Southern District of New York

Dear Howard:

As you know, Robinson + Cole LLP ("RC") serves as counsel to Heather Barlow in her capacity as Trustee of the Endo Mesh Trust in the above-reference matter. RC noted the filing of the Complaint last Tuesday by Jodie Philipsen and Janice Seymour, "on behalf of themselves and all other similarly situated Australian Mesh Claimants" (which has not been served) (the "Complaint") and received by email a copy of their Motion for Temporary Restraining Order and Preliminary Injunction (the "TRO Motion") filed on Friday.

This letter is to demand immediate withdrawal with prejudice of the Complaint and TRO Motion. Section 4.8.1 of the Endo Mesh Trust Agreement ("the Mesh Trust Agreement") expressly provides that "[a]n Eligible Mesh Claimant who disagrees with the ruling of the Mesh Trust may file a lawsuit in state or federal court in the United States . . . against the Mesh Trust. . . . Any such lawsuit ***must be filed by the Eligible Mesh Claimant in her or her or her own right and name, and not as a member or representative of a class***, and no such lawsuit may be consolidated with any other lawsuit ***and may only name the Mesh Trust as a defendant***." (Emphasis supplied.)

First, without concession that Ms. Philipsen and Ms. Seymour are Eligible Mesh Claimants, the Plaintiffs may not proceed with the Complaint and TRO Motion in their current form. To the

Robinson+Cole



extent that the Plaintiffs or either of them have standing to seek any relief against the Trust, relief may only be pursued on an individual claimant basis. Specifically, relief may not be pursued by or on behalf of the class of or a group of Australian claimants represented by your firm.

Second, we are aware of Australian claimants who are not represented by your law firm. Accordingly, the Trust intends to seek to ensure that proper authorization is provided for any future complaint filed by your firm.

Third, any lawsuit filed must name the Mesh Trust and not Ms. Barlow as Trustee as captioned in the current Complaint and TRO Motion.

In addition to these significant procedural problems, there are significant substantive problems with the Complaint, Motion and underlying representations.

The Mesh Trust Agreement is explicit that if deficiency notices were provided, "[u]nless such deficiencies are corrected within thirty (30) days of the Mesh Trust providing notice, such Claim ***shall be deemed to be Disallowed for all purposes of the Mesh Trust.***" *See* Section 4.1(e)(emphasis supplied). Here, all Mesh Claims that failed to submit an executed HIPAA form by the initial claims submission deadline were provided with a deficiency notice (both the Australian Claimants and all other mesh claimants) identifying that deficiency (and others, as applicable). Indeed, you acknowledged that notice of the HIPAA deficiency was provided to your clients in your March 19, 2025, communication. In short, this provision was self-executing and final.

Consequently, the allegation that a single "as applicable" reference included in one provision (section 3.2.3 of the Mesh Trust Process) permits a claimant or claimant counsel to unilaterally decide what they are required to submit to the Trust, and to ignore other specific and unambiguous Trust provisions, is wholly meritless.

In addition to section 4.1(e), section 4.1(b) of the Mesh Trust Agreement provides, in relevant part, "Additionally, the Trust Submission Form ***shall include*** (i) a HIPAA relate form ("HIPAA Release"), substantially in the form attached here to as Exhibit 3, and . . . ." (Emphasis supplied.)

Further, the Trust Submission Form for the Mesh Claims Process contains an all caps notice that: FAILURE TO SUBMIT THIS MESH TRUST SUBMISSION FORM AS PROVIDED IN THE MESH CLAIMS PROCESS AND THE MESH TRUST AGREEMENT MAY CAUSE THE MESH CLAIM TO BE DEEMED NON-COMPENSABLE UNDER THE MESH CLAIMS PROCESS AND THE MESH TRUST AGREEMENT.

Robinson+Cole



In your capacity as counsel, you have been involved in the underlying bankruptcy cases since at least March 10, 2023, when you filed an entry of appearance. See D.I. 1458 At the time you filed the appearance you made clear that all of your clients were part of purported Australian class. *See id.*

You also made clear in the TRO Motion that you and your counterparts in Australia "were provided drafts of the Mesh Trust Agreement and Mesh Claims Process by counsel for the Committee for review and comment before they were finalized." TRO Motion at p7 fn 5. A HIPAA form was attached as Exhibit 3 to the Mesh Claims Process Form.

Because of your unique access to the process, you were able to review the multiple instances that required execution of a HIPAA Release as well as the form itself. Your response was to seek addition of "as applicable" to section 3.2.3. Arguably, that provision provided the Trust with discretion to determine whether or not to require a HIPAA form. Notably, you did not seek language exempting non-US based claimants (or even just Australian claimants) from providing a HIPAA Release. Your failure to act then (or later) does not excuse your failure to timely act and does not provide a legitimate basis to seek to undo a process that claimants, including those in countries other than the United States (including other Australian Claimants not represented by you), satisfied and satisfied in the time allotted.

Aside from the clear language of the Trust documents, you were repeatedly told by the Trust that HIPAA forms were required to qualify for compensation. Over two years ago, in response to an inquiry from you dated May 6, 2024, after formation of the Trust, seeking an extension of the submission deadline, on May 8, 2024, the Mesh Trust advised you in writing that "We are not in a position to adjust the deadline ***or claim requirements***." (Emphasis supplied.) August 5, 2024 was established as the deadline for Trust submissions. You thereafter obtained an extension to October 7, 2024.

As previously recognized by the Bankruptcy Court, the Mesh Trustee has broad discretion in discharging her fiduciary duties to the Mesh Trust. *See* Memorandum Decision Sustaining Plan Administrator's Eighth Omnibus Objection to Certain Claims to be Reclassified. D.I. 206 (the "Reclassification Decision"). As set forth in the Reclassification Decision,

> Pursuant to the Endo Mesh Trust Agreement, as part of her fiduciary duties, the Mesh Claims Trustee oversees the allowance or disallowance of Class 4(C) Mesh Claims. Under the agreement, the Mesh Claims Trustee has broad discretion as to both the process relating to, and the ultimate decision with respect to, allowance or disallowance of Class 4(C) Claims. The agreement does not require Court approval of the allowance or disallowance of Mesh Claims or the valuation of Mesh Claims.

(internal citations omitted)

As noted above, following receipt of Trust submission forms, the Mesh Trustee exercised the discretion provided in Section 4.1(e) of the Mesh Trust Agreement to "provide notice of such deficiencies to such holder." The Plaintiffs (and all other claimants who timely submitted Trust forms) were provided the opportunity to supplement their claims submissions to comply with the Trust's requirements. Among the categories identified in those deficiency letters was the absence of a HIPAA Form. March 13, 2025, was established as the deadline for additional documents and information to be submitted in response to deficiency notices.

Not only is the Trust Agreement explicit that "[u]nless such deficiencies are corrected within thirty (30) days of the Mesh Trust providing notice, such Claim shall be deemed to be Disallowed for all purposes of the Mesh Trust," on February 28, 2025, before the deficiency submission deadline, we again advised you that "[t]he Trust intends to review only those claims that have submitted ***all*** required information." (Emphasis supplied.)

Ultimately, the March 13 deadline was extended again to March 20, 2025, because of weather conditions in Australia.

On March 19, 2025, the day before the extended deadline, you wrote acknowledging that HIPAA forms had not been submitted by the Australian claimants, saying, among other things:

> We did not supply HIPPA [sic] forms for the Australian claimants because they are not subject to it and have no idea even what HIPPA [sic] is. ***If this is something that Heather thinks is nonetheless mandatory for some reason, then I'd like to discuss***. It is not possible to get thousands of these forms signed by tomorrow. (Emphasis supplied.)

As you recognized in your March 19, 2025, communication, it was the sole province of the Trust to determine whether or not to require a HIPAA form.

We responded within the hour stating:

> [T]he Trust has been very clear throughout that ***each and every document subject to a deficiency notice must be submitted*** by the deadline of March 20, 2025. ***Without a completed HIPPA*** [sic] ***form, the claims will be considered deficient and will be disallowed.*** We do not believe a dialogue on this will be productive.

Despite that exchange, you took no timely action to address the imminent disallowance of your clients' claims.

Robinson+Cole



In short, the Trust told you repeatedly over a two-year period in advance of the deficiency deadline that a HIPAA form was required in order for claims to qualify for payment, including the day before the final deadline.

Even if the Mesh Trust Agreement did not provide explicitly for disallowance of claims with uncured deficiencies, which it does, the history of communications with the Trust make any effort by the Australian Claimants represented by your firm to challenge the HIPAA requirement barred by latches (and otherwise improper).

Despite the express provisions of the Mesh Trust Agreement and the various direct communications from the Trust, you and your clients elected not to complete the form and did not seek to challenge, amend or meet the Trust's requirements until you learned that the Trust was getting closer to making a distribution to claimants. Now, fifteen months later, you and your clients (or two of them) seek to obtain preferential treatment to all other claimants who complied with the Trust's requirements, including other foreign claimants who submitted HIPPA forms. Such action appears transparently designed to use cost and delay as leverage to obtain an unjustified payment from the limited Trust assets available to qualifying mesh claimants.

In light of the June 30th hearing set on the TRO Motion, ***please advise us by 5:00pm ET this Friday, June 12, 2026,*** whether Plaintiffs will withdraw the Complaint and TRO Motion with prejudice.

We look forward to your response.

Very truly yours,

Natalie D. Ramsey

Natalie D. Ramsey

cc: Heather Barlow, Endo Mesh Trustee (*via email*)

# Exhibit E

R3M

R3M LAW, LLP

HOWARD P. MAGALIFF

Direct 646.453.7854
Cell 203.417.4070
Fax 212.913.9642
Email hmagaliff@r3mlaw.com

June 12, 2026

**BY EMAIL (nramsey@rc.com)**

Natalie D. Ramsey, Esq.
Robinson + Cole
1201 North Market Street, Suite 1406
Wilmington, DE 19801

Re: *Phillipsen, et al. v. Barlow*
Adv. Pro. 26-7068

Dear Natalie:

I write to respond to your June 9th letter.

For almost 18 months, we have sought in vain to discuss with you and the Mesh Trustee the non-applicability of HIPAA and the fact that we have submitted all of the available medical records for which a HIPAA Release would be required from U.S. hospitals and medical providers, yet you have steadfastly refused to engage substantively. All of your responses have been variations of the same – the procedure requires the submission of a HIPAA Release, notwithstanding the clear and unequivocal qualifier, "if applicable." You may not be aware, but this qualifier was added at our request during negotiations with Kramer Levin about the Mesh Trust Agreement and the claim procedures precisely because we did not want our 6,000 clients to be forced to submit something that is neither applicable in Australia nor relevant. Far from your efforts to diminish the import of these two words – "if applicable" – by references to other procedural language in the documents, this is, in fact, the most significant language, which we believe is dispositive. Further, while we do not dispute that the Mesh Trustee has discretion to allow or disallow eligible claims, she does not have the discretion to decide what the law is and if it applies.

Which leads to a more fundamental question – why? As you pointed out, the Reclassification Decision acknowledges that the Mesh Trustee has fiduciary duties. It seems obvious that her responsibility to all Mesh Claimants should be to maximize to the greatest extent recovery to the thousands of women injured by mesh implants. We understand that there will be Australian Mesh Claimants whose claims are disallowed on the merits. However, the wholesale disallowance on inapplicable procedural grounds, especially when we have already satisfied the substance of what the HIPAA Release is designed to achieve – turnover of medical records – is inexplicable and fundamentally at odds with the Mesh Trustee's fiduciary duties.

I also find it curious that on the one hand you allege that we are using cost and delay as leverage, while on the other hand you assert that we should be filing thousands of individual lawsuits. Which path do you think will add more to the cost and delay?

I am not going to litigate the issues you've raised by letter. Suffice it to say that we disagree with your analysis, and are prepared to let the Court decide these issues. We are not going to withdraw the complaint. We have amended the complaint to add the Mesh Trust and the Delaware Trustee as defendants, and make clear why the plaintiffs should be treated as class representatives for this single, legal issue.

As I have been trying for over a year, albeit unsuccessfully, we are ready and willing to have a substantive discussion with you. We think there is a simple and easy resolution, but if you have concluded that HIPAA applies to the Australian Mesh Claimants and that we are wrong, then I urge you to share your analysis. However, if you prefer to continue the litigation, so be it.

Have a good weekend.

Sincerely,

Howard P. Magaliff

cc: Simon Morrison, Esq.

# Exhibit F

**From:** Ramsey, Natalie D.
**Sent:** Wednesday, May 8, 2024 7:45 PM
**To:** Howard Magaliff
**Cc:** Simon Morrison
**Subject:** Re: Endo Mesh Claims

Howard,

We are not in a position to adjust the deadline or claim requirements.

Please let us know if you have any further questions.

Kind regards, Natalie
Sent from my iPhone

On May 6, 2024, at 2:19 PM, Howard Magaliff <HMagaliff@r3mlaw.com> wrote:

**CAUTION:** **EXTERNAL EMAIL**

---

Good afternoon Natalie. We've spoken in the past with Heather, but as you're now representing her as the Mesh Trustee I'm contacting you.

I represent approximately 6,700 Australian mesh claimants in the bankruptcy case. Simon Morrison from Shine Lawyers in Brisbane, cc'd, is their lead attorney in Australia. Simon and I have had extensive discussions with Kramer Levin about the terms and provisions of the Mesh Trust Agreement and related procedures, and are generally satisfied with the final documents as they reflect most of our comments and address most of our concerns. However, there are two issues that we'd like to discuss.

The first concerns the Trust Submission Forms. The required information includes medical records and evidence of surgeries. The attorneys at Shine have told me that there may be real difficulties getting the forms completed and submitted by the claimants by the July 1 deadline. The form is complex and likely difficult to understand for our group members, and the IT team in Australia will need several weeks to pull everything together into a usable form. Is there any flexibility to either extend the July 1 deadline or simplify the form?

This leads to the second issue, which is whether Heather has considered (we've discussed previously) using the Foreign Allocation approach referenced in n.3 of the agreement. If she is going to deal with the mesh claims via the allocation method, perhaps there is a way to simplify the form to get her the information she needs with less of a burden for us.

We'd like to schedule a call with you, and Heather if you think it would be helpful, to discuss. Simon is in the US now, so we won't have to concern ourselves with the usual 14-15 hour time difference.

Thanks, look forward to hearing from you.

R3M LAW, LLP

Howard P. Magaliff
6 East 43rd Street. 21st Floor ■ New York, NY 10017
M 646.453.7851 ■ F 212.913.9642
hmagaliff@r3mlaw.com ■ r3mlaw.com

***Please note our new address.***