R3M LAW, LLP
437 Madison Avenue, 24th Floor
New York, NY 10017
646.453.7851
Howard P. Magaliff
Taylor M. Haga

*Attorneys for Jodie Philipsen and Janice Seymour,*
*on behalf of themselves and all other similarly situated*
*Australian Mesh Claimants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
In re:                                                   :        Chapter 11
                                                         :
ENDO INTERNATIONAL plc, *et al.*,                        :        Case No. 22-22549 (DSJ)
                                                         :        (Jointly Administered)
                         Debtors.[1]                     :
------------------------------------------------------------------- x
JODIE PHILIPSEN and JANICE SEYMOUR,                      :
on Behalf of Themselves and All Other Similarly          :
Situated Australian Mesh Claimants,                      :        Adv. Pro. No. 26-7068
                                                         :
                         Plaintiffs,                     :
                                                         :
             – against –                                 :
                                                         :
HEATHER BARLOW, as Trustee for the                       :
Endo Mesh Trust, U.S. BANK TRUST NATIONAL                :
ASSOCIATION as the Delaware Trustee for                  :
the Mesh Trust, and the ENDO MESH TRUST,                 :
                                                         :
                         Defendants.                     :
------------------------------------------------------------------- x

## RESPONSE TO OBJECTION TO MOTION OF JODIE PHILIPSEN AND JANICE SEYMOUR FOR A PRELIMINARY INJUNCTION, FOR ENTRY OF AN ORDER SCHEDULING A HEARING, AND FOR A TRO ON NOTICE PENDING THE HEARING

---

[1] The last four digits of Debtor Endo International plc's tax identification number are 3755. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided here. A complete list of this information may be obtained on the website of the Debtors' claims and noticing agent at *https://restructuring.ra.kroll.com/Endo*. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

TO THE HON. DAVID S. JONES,
UNITED STATES BANKRUPTCY JUDGE:

Jodie Philipsen ("Ms. Philipsen") and Janice Seymour ("Ms. Seymour" and, together with Ms. Philipsen, the "Plaintiffs"), on behalf of themselves and all other similarly situated Australian Mesh Claimants,[2] by their attorneys R3M Law, LLP, respectfully submit this response to the *Objection to the Motion of Jodie Philipsen and Janice Seymour for a Preliminary Injunction, for Entry of an Order Scheduling a Hearing, and for a TRO on Notice Pending the Hearing* [Adv. ECF doc. 5] (the "Objection"), and state:

1.    In 18 months of discussions with the Mesh Trustee, during which the Australian Mesh Claimants have tried repeatedly to discuss the substance of this dispute, we have been met with a wall of procedural silence.  Never once has the Mesh Trustee even responded to the substantive question at the heart of this matter – why, if HIPAA is inapplicable to the Australian Mesh Claimants, who have provided all of the available medical records (and which, as discussed *infra*, the Mesh Trustee admits she has reviewed), does the Mesh Trustee insist that HIPAA Releases be provided upon pain of summary disallowance of the claims?  In her Objection, the Mesh Trustee points to counsel's June 12, 2026 letter to Attorney Ramsey (*see* Ramsey Decl., Ex. D); it is worth highlighting the salient point of that letter:

> Which leads to a more fundamental question – why?  As you pointed out, the Reclassification Decision acknowledges that the Mesh Trustee has fiduciary duties.  It seems obvious that her responsibility to all Mesh Claimants should be to maximize to the greatest extent recovery to the thousands of women injured by mesh implants.  We understand that there will be Australian Mesh Claimants whose claims are disallowed on the merits.  However, the wholesale disallowance on inapplicable procedural grounds, especially when we have already satisfied the substance of what the HIPAA Release is designed to achieve – turnover of medical

---

2    Capitalized terms are defined in the Motion, the Plan or the Mesh Trust Agreement, as applicable.

records – is inexplicable and fundamentally at odds with the Mesh Trustee's fiduciary duties.

Despite the centrality of this as yet unanswered question, the Objection continues to assert mostly procedural arguments which, as discussed in the Motion and below, fail upon close scrutiny.

2.   Nonetheless, there is a simple way for this Court to resolve the question presented. Consider hypothetically that both the Australian Mesh Claimants and the Mesh Trustee are correct (which we do not concede): HIPAA does not apply, and the Australian Mesh Claimants are required under the terms of the Mesh Trust Agreement to bring thousands of individual declaratory judgment actions because they previously withdrew their Class Certification Motion with prejudice. This presents the Court with a question that on its face seems incapable of resolution. It is not. Section 105 of the Bankruptcy Code[3] gives this Court, as a court of equity, the authority it needs to fashion an equitable remedy. The Court can certify a different class consisting of only those Australian Mesh Claimants who did provide proper medical records (some 4,000 according to the Mesh Trustee) for the sole purpose of answering the single, common legal question of whether HIPAA applies.

3.   We turn to specific points raised in the Objection.

---

[3]   "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). Plaintiffs submit that this Court has the authority to and should allow this matter to proceed as a limited class action, so that any judgment as to the correct interpretation of the Mesh Trust Agreement applies to all of the Australian Mesh Claimants as necessary and appropriate to enforce and implement the law and the allowance of claims as contemplated by the confirmed Plan.

4928-8248-6711, v. 12

A.     **Laches Does Not Apply**

4.     The Mesh Trustee argues that laches should bar Plaintiffs' claims because they purportedly waited 15 months after their claims were disallowed to file this action. The argument is both wrong and misplaced. While there is correspondence over the past year indicating that the Mesh Trustee intended to disallow the claims for failure to provide HIPAA Releases, Plaintiffs never received actual notice or communication indicating that their claims had in fact been disallowed. To the contrary, having consistently told the Mesh Trustee that HIPAA is inapplicable, and relying upon the "if applicable" language in section 3.2.3 of the Mesh Claims Process that is incorporated into the Mesh Trust Agreement, the Australian Mesh Claimants have been in limbo waiting to hear from the Mesh Trustee. It was not until May 1, 2026, in response to counsel's inquiry seeking the status of his clients' claims, that the Mesh Trustee indicated that she would <u>not</u> be providing notice of disallowance and, impliedly, that the Australian Mesh Claimants could therefore consider their claims disallowed:

> [T]he Trust has repeatedly advised you that absence submission of a properly completed HIPPA form, claims would be considered deficient and would be disallowed. Because the Trust is not required to provide notice of disallowance and to avoid depletion of the limited funds available for compensation of claimants, the Trust does not intend to provide individualized notice of disallowance. However, as you are aware, no claimant represented by your firm complied with all of the requirements of the Claims Submission Procedures.

A copy of this email is attached as <u>Exhibit 6</u> to the Motion. No communication prior to the May 1, 2026 email indicated that the Plaintiffs' claims had been disallowed, or that the Mesh Trustee was not going to provide notice to claimants.

5.     Laches "is an equitable defense that 'bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the

4

defendant." *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998) (internal quotation marks and citations omitted). "A party asserting the defense of laches must establish that: (1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay." *Id.* (citing *Tri-Star Pictures, Inc. v. Leisure Time Prod., B.V.*, 17 F.3d 38, 44 (2d Cir. 1994)).

6.      Here, Plaintiffs did not unreasonably or inexcusably delay in bringing this action. Until the Mesh Trustee's email of May 1, 2026, the Plaintiffs did not know with certainty that the Mesh Trustee had apparently concluded either that HIPAA did apply or that its inapplicability was irrelevant, and that the claims had actually been disallowed. They only learned that "the Trust d[id] not intend to provide individualized notice of disallowance" on May 1, 2026, 34 days before Plaintiffs brought this action. Once Plaintiffs were informed that they would not be receiving notice of disallowance and, impliedly, could consider their claims disallowed, Plaintiffs filed this action seeking declaratory relief and an injunction to prevent the distribution of funds before this issue could be decided.

7.      Moreover, there is no prejudice to the Mesh Trustee. She has not yet commenced distributions to Eligible Mesh Claimants. To the extent the Mesh Trustee is arguing that she would be prejudiced because she would have to go back and review all of the claims that were disallowed solely for failure to provide a HIPAA Release, that simply does not constitute prejudice, to the Mesh Trustee or anyone else – it is a red herring. The Mesh Trustee indicates in her Objection that approximately 4,000 claims as well as the medical records supporting those claims have already been reviewed:

> Movants misleadingly state that there are approximately 6,000 claimants who are similarly situated. Movants are wrong. Almost 2,000 of the claimants on whose behalf Movants seek to act failed to provide proper medical documentation or satisfy other trust

5

4928-8248-6711, v. 12

requirements separate from providing a HIPAA Release. Those claims cannot be resurrected through this adversary.

Objection, n.4.

8.      The prejudice to the 4,000 or so Australian Mesh Claimants who submitted medical records, on the other hand, would be profound. Their claims would be disallowed for the failure to provide a document that is legally irrelevant when they have already complied with its substance. Laches does not apply as a defense to this action.

### B.      **The Complaint is Not Barred Under the Terms of the Mesh Trust Agreement**

9.      The Mesh Trustee asserts that the Complaint is procedurally improper because it does not comply with section 4.8.1 of the Mesh Trust Agreement. The Mesh Trustee misreads the agreement; that section does not apply to this action. Section 4.8.1 governs personal injury tort actions based on Mesh Claims asserted in the tort system:

> **Suits in the Tort System.** An Eligible Mesh Claimant who disagrees with the ruling of the Mesh Trust may file a lawsuit in a state or federal court in the United States, that would otherwise have jurisdiction over such a Mesh Claim[;] … If the Eligible Mesh Claimant was alive at the time the Trust Submission Form was filed with the Mesh Trust, the case shall be treated as a personal injury case with all personal injury damages to be considered even if the Eligible Mesh Claimant has died during the pendency of the applicable proceedings.").

10.     This is an action for declaratory judgment as to the proper interpretation of the Mesh Trust Agreement, not a personal injury tort claim brought after disallowance of a claim on the merits. Moreover, the Mesh Trustee's argument regarding section 4.8.1 is procedural, not substantive, and therefore should have little to no bearing on the likelihood of success on the *merits* of Plaintiffs' declaratory judgment action, which is the relevant analysis for purposes of preliminary injunctive relief.

6

4928-8248-6711, v. 12

### C.        Res Judicata Does Not Apply

11.        The Mesh Trustee asserts that Plaintiffs cannot prosecute this action as class representatives because they previously withdrew their Class Certification Motion with prejudice, and therefore res judicata prevents this Court from certifying a new class. Res judicata based on the prior Class Certification Motion should not be applied. "Under … federal law, the doctrine of res judicata, or claim preclusion, provides that [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Sikorsky v. City of Newburgh New York*, 136 F.4th 56, 62 (2d Cir. May 2, 2025) (internal citations and quotations omitted). "Thus, claim preclusion bars re-litigation if (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id.* (internal citation and quotations omitted). "Central to considering this [last] prong is what is meant by 'claim' or 'cause of action.' A claim or cause of action is a group of operative facts giving rise to one or more bases for suing." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 2010 U.S. Dist. LEXIS 113815, at *29 (C.D. Cal. Aug. 18, 2010) (internal citations and quotations omitted). "Thus, in determining whether two suits involve the same claims, the Court must inquire whether the second claim 'arise[s] out of the same set of factual circumstances.'" *Id.* (internal citations and quotations omitted). Doubts as to the propriety of imposing a *res judicata* bar are resolved against the parties seeking that bar. *Power Travel Int'l v. Am. Airlines*, 2004 U.S. Dist. LEXIS 21802, at *25-26 (S.D.N.Y. Nov. 5, 2004) ("Resolving doubts as to the propriety of imposing a res judicata bar against the parties seeking that bar, and in light of the foregoing discussion, the class allegations shall not be stricken from Power Travel's amended complaint.").

7

4928-8248-6711, v. 12

12. While this proceeding might superficially seem a candidate for the application of res judicata, it is not. The parties are not the same and the claims do not arise out of the same operative facts as those in the prior motion. The putative class in the prior proceeding consisted of women harmed by the Debtors' vaginal mesh implants, who were seeking only to file a single, class proof of claim against the Debtors. The class proof of claim would have treated the claims of all of the injured women substantively on the merits as a single claim in a collective fashion. The Australian Mesh Claimants withdrew that motion with prejudice because they agreed with the objecting parties to file a consolidated claim, which afforded only procedural relief but would treat each claim individually on the merits. Significantly, the Mesh Trustee was not a party to that proceeding, because the Plan had not yet been confirmed and the Mesh Trust established.

13. The putative class in this proceeding consists of those intended beneficiaries of the Mesh Trust who submitted proper medical records (a subset of the prior putative class) and who are harmed by the Mesh Trustee's erroneous and arbitrary interpretation of the Mesh Trust Agreement to disallow their claims on an expressly inapplicable basis. Prior certification of this putative class would have been premature because the operative facts giving rise to the class of similarly situated individuals (*i.e.*, the execution of the Mesh Trust Agreement and the Mesh Trustee's arbitrary denial of each of the putative class members' claims based solely on her erroneous interpretation of the "if applicable" HIPAA Release language) had not yet occurred and the common question of law and fact (*i.e.*, whether the Mesh Trustee's interpretation of the "if applicable" language is proper) did not yet exist.

14. Based on the foregoing and that any doubt as to the propriety of imposing a res judicata bar should be resolved against the party seeking that bar, res judicata should not be

8

4928-8248-6711, v. 12

applied here.  Moreover, like the Mesh Trustee's argument about representative versus individual actions, the question of class certification is procedural, not substantive, and therefore should have little to no bearing on the likelihood of success on the *merits* of Plaintiffs' declaratory judgment action.

> **D.   The Mesh Trust Agreement Should be Interpreted
> So as Not to Render any Provision Superfluous**

15.   The Mesh Trust Agreement, read as a whole and affording meaning to each provision, should be interpreted as providing that a HIPAA Release is required only "if applicable" so as not to render any provision superfluous.  Under Delaware law, which governs the Mesh Trust Agreement, a contract should be construed to give full meaning and effect to all provisions, and courts should avoid interpretations that render contractual language meaningless. *See Tekni-Plex, Inc. v. LLFlex, LLC,* 2021 Del. Super. LEXIS 334, at * 7 (Del. Super. Apr. 22, 2021) ("Delaware courts have consistently held that an interpretation that gives effect to each term of the agreement is preferable to any interpretation that would result in a conclusion that some terms are uselessly repetitive." (quoting *O'Brien v. Progressive Northern Ins. Co.*, 785 A.2d 281, 287 (Del. 2001))); *Cheseroni v. Nationwide Mut. Inc. Co.*, 402 A.2d 1215, 1217 (Del. Super. Ct. 1979), *aff'd* 410 A.2d 1015 (Del. 1980) ("[A] single clause or paragraph of a contract cannot be read in isolation, but must be read in context, and every portion of the contract deserves consideration."); *New Castle Cnty v. Nat'l Union Fire Inc. Co. of Pittsburgh, Pa.*, 174 F.3d 338, 349 (3d Cir. 1999) ("[T]his court takes care not to render other portions of a provision or contract superfluous when construing contract language." (citations omitted).  *Accord*, *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121, 124 (2d Cir. 2003) (recognizing under New York law that "[a] contract should be construed so as to give full meaning and effect to all of its provisions" and that "an interpretation of a contract that has the effect of rendering at least

9

4928-8248-6711, v. 12

one clause superfluous or meaningless … is not preferred and will be avoided if possible" (internal quotations and citations omitted)); *see also* Restatement (Second) of Contracts § 203(a) (1979) (stating that "an interpretation which gives a reasonable, lawful and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect").

16.     The Mesh Trust Agreement provides, in pertinent part: "To establish an Allowed Mesh Claim in accordance with this Mesh Claims Process, an Eligible Mesh Claimant must satisfy all of the following criteria:

> i.   Meet the [Scheduled Value and Medical/Exposure Criteria];
>
> ii.  Complete, sign and submit the Trust Submission Form;
>
> iii. Complete, sign and submit the HIPAA Release, **if applicable**; and
>
> iv.  If the Eligible Mesh Claim concerns the injuries of a decedent, execute and submit the Heirship Declaration."

Mesh Trust Agreement, Ex. 1 § 3.2 (emphasis added).  As explained in the Motion, the "if applicable" language emphasized above was specifically added to indicate that such provision applied only, "if applicable."  *See* Motion, n.5.  Though a separate section of the Mesh Trust Agreement provides that "the Trust Submission Form shall include [] a HIPAA release form" (Mesh Trust Agreement, § 4.1(b)), such language should not be read to render the "if applicable" language superfluous, particularly when such seemingly inconsistent language can be interpreted to indicate simply that the HIPAA Release must be submitted *with* the Trust Submission Form, to the extent such release is applicable.  This interpretation does not render any provision, including the "if applicable" language, superfluous.

17.     In contrast, the Mesh Trustee does not even pretend to address what the "if applicable" language means, if not the obvious, and instead asks this Court to find that it has no

10

meaning at all.  That is not consistent with the law.  The Mesh Trust Agreement, read as a whole

and affording meaning to each provision, should be interpreted as providing that a HIPAA Re-

lease is required only "if applicable."  Plaintiffs have demonstrated in the Motion why HIPAA

does not apply, which the Mesh Trustee ignores.  Accordingly, Plaintiffs have a likelihood of

success on the merits.

> **D.     The Mesh Trust Agreement Does Not Provide the
> Mesh Trustee With Discretion to Act Arbitrarily**

18.     To the extent the Mesh Trustee is arguing that, notwithstanding the "if ap-

plicable" language, she has discretion under the Mesh Trust Agreement to find claims deficient

for any reason, even if arbitrary, and thereby require the claimant to cure the deficiency within a

certain amount of time or face automatic disallowance, she does not.  Requiring the Australian

Mesh Claimants to submit a form that the law does not require and that the Mesh Trust Agree-

ment expressly does not require them to submit, and for no other stated or conceivable reason, is

arbitrary.   It is arbitrary regardless of the resources needed to cure the deficiency, but is particu-

larly arbitrary here, where significant time and money would need to be spent to have 6,000

claimants execute a document that was not required based on the law and the express terms of

the Mesh Trust Agreement.  The Mesh Trustee simply does not have the discretion to deem a

claim deficient for failure to include a HIPAA Release where the Mesh Trust Agreement specifi-

cally does not require one in this case, refuse to engage in any substantive discussion regarding

the applicability of the requirement, and then find the claim automatically disallowed for failure

to cure this purported deficiency.  *See* Exhibit 5 attached to the Motion (Mesh Trustee stating

through counsel: "We do not believe a dialogue on this will be productive.").  To the extent the

Mesh Trustee has discretion to require a HIPAA Release, it is an abuse of that discretion to

11

require one where it is inapplicable to the claimant under the express terms of the Mesh Trust Agreement.

19.     The Mesh Trustee asserts that she made the decision to require HIPAA Releases because she needed them to "freely review" the medical records provided to her and "to ensure that claimants' medical privacy was respected":

> The Mesh Trustee made a fiduciary decision to ensure that every Mesh Claimant had provided consent to the Mesh Trust so that it could freely review provided information[.] … The Mesh Trust made the decision to require the form of HIPAA Release attached to the Mesh Claims Process to ensure that claimants' medical privacy was respected.

Objection, p. 20.  That argument is disingenuous given that she noted in her Objection that she already reviewed the medical records of all claimants and found approximately 4,000 claimants to have provided proper medical documentation and 2,000 to have not, despite not having a HIPAA Release from any of those claimants.  *See* Objection, n.4.

20.     The argument is also disingenuous because, if it were the case that a HIPAA Release is required for the Mesh Trustee to review medical records provided to her, then there would be no reason to include the "if applicable" language.  HIPAA simply does not apply to prevent the Mesh Trustee from reviewing medical documents provided to her.  HIPAA only applies to, *i.e.*, imposes privacy and disclosure obligations on, "covered entities" and their "business associates."  *See* 42 U.S.C. § 1320d *et seq.*  The Mesh Trustee does not come close to meeting either definition.  *See* 45 C.F.R. § 164.103 ("Covered entity means: (1) A health plan. (2) A health care clearinghouse. (3) A health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter."; "Business associate includes: (i) A Health Information Organization, E-prescribing Gateway, or other person that provides data transmission services with respect to protected health information to a covered

12

entity and that requires access on a routine basis to such protected health information. (ii) A person that offers a personal health record to one or more individuals on behalf of a covered entity. (iii) A subcontractor that creates, receives, maintains, or transmits protected health information on behalf of the business associate.").

21.   The purported justification, raised by the Mesh Trustee for the first time in litigation, does not make her actions any less arbitrary.   There simply is no justifiable reason for the Mesh Trustee to have required a HIPAA Release, and her disallowance of approximately 4,000 individual claimants seeking recovery for serious injury solely on that basis (and not on any substantive basis), despite reviewing those claimants' medical records and finding them proper, is plainly arbitrary.

**E.       The Mesh Trustee Seriously Miscalculates the Balance of Harm**

22.   Absent an injunction, Plaintiffs, who represent the majority of the intended beneficiaries of the Mesh Trust, will permanently lose their ability to recover on claims once all available funds are distributed.  In contrast, if an injunction is issued, the Mesh Trustee will have to recalculate distributions based on the addition of Plaintiffs' claims that have apparently already been reviewed[4] and were disallowed solely on the basis that the claimant did not provide a HIPAA Release, and other claimants with allowed claims will have to wait for that to happen to receive the distribution to which they are entitled.[5]  Accordingly, the balance of harm tips strongly in Plaintiffs' favor.

23.   The Mesh Trustee argues that "because [Plaintiffs'] claims so substantially outnumber the entire pool of compliant claims, any reserve sized to the Movants' asserted claims

---

[4]     To the extent more review is necessary, such a task can hardly be considered harm; it is simply the job of a trustee.

[5]     It is notable that no other mesh claimant or her counsel raised any objection to the proposed injunction.

would itself consume the Mesh Trust's assets and freeze distributions to the compliant claim-ants" and that "[t]he potential additional delay and dilution of the remaining trust assets would cause the compliant claimants irreparable harm."  Objection pp. 23-24.  First, that in no way es-tablishes irreparable harm, particularly given the Mesh Trustee appears to have already reviewed the propriety of the documents submitted for the Australian Mesh Claimants and determined that some 2,000 claimants had no medical documentation.  Second, if the other claimants were never entitled to the amounts the Trustee seeks to distribute, those claimants are not prejudiced by this action.  The fact that Plaintiffs represent the vast majority of individuals intended to benefit from the Mesh Trust only highlights the amount of harm absent an injunction.

24.     For all of the reasons set forth in the Motion and this Response, the Mesh Trustee's Objection should be overruled and a preliminary injunction entered.

Dated:   New York, New York          R3M LAW, LLP
         June 28, 2026                Attorneys for Jodie Philipsen, *et al.*
                                      By:

                                      /s/ Howard P. Magaliff
                                      HOWARD P. MAGALIFF
                                      437 Madison Avenue, 24th Floor
                                      New York, NY 10022
                                      646.453.7851
                                      *hmagaliff@r3mlaw.com*

14