**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ENDO INTERNATIONAL PLC, *et al.*,[1]<br><br>Debtors. | Case No. 22-22549 (DSJ)<br>Chapter 11 |
| JODIE PHILIPSEN and JANICE SEYMOUR, on Behalf of Themselves and All Other Similarly Situated Australian Mesh Claimants,<br><br>Plaintiffs,<br><br>v.<br><br>HEATHER BARLOW, as Trustee for the Mesh Trust, U.S. BANK TRUST NATIONAL ASSOCIATION as the Delaware Trustee for the Mesh Trust, and the ENDO MESH TRUST,<br><br>Defendants. | Adv. Pro. No. 26-07068 (DSJ) |

**MEMORANDUM DECISION AND ORDER DENYING THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**APPEARANCES:**

**R3M LAW, LLP**
*Counsel for Plaintiffs, Jodie Philipsen and Janice Seymour, on behalf of Themselves and All Other Similarly Situated Australian Mesh Claimants*
437 Madison Avenue, 24th Floor
New York, NY 10022
By: Howard P. Magaliff

**ROBINSON & COLE LLP**
*Counsel for Defendant Heather Barlow, as Trustee for the Mesh Trust*
1650 Market Street, Suite 3600
Philadelphia, PA 19103
By: Natalie D. Ramsey

[1] The last four digits of Endo International plc's tax identification number are 3755. Due to the large number of debtors in the chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list may be obtained on the website of the debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo.

**KELLEY DRYE & WARREN LLP**
*Counsel for Defendant U.S. Bank Trust National Association*
3 World Trade Center
175 Greenwich Street
New York, NY 10007
By: Connie Choe
Kristin Elliott
Eric Wilson

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

This decision resolves a dispute between a group of claimants and the trustee of a post-confirmation trust that is charged with determining claim eligibility and making distributions to eligible claimants. The trustee notified a group of Australian claimants that their claims would be disallowed unless they submitted HIPAA releases so that the trustee could be assured that she was authorized to review and share claimants' medical records as needed to determine eligibility. The Australian claimants declined to provide the HIPAA releases as instructed by the trustee, and the trustee then determined the claimants to be ineligible for compensation. The parties' dispute hinges on competing interpretations of the trust's governing documents and the propriety of the actions taken by the trustee that resulted in the disallowance of the group's claims.

By way of brief orientation for the reader, Endo International PLC and related entities were a major pharmaceutical enterprise that underwent a Chapter 11 bankruptcy process in this Court beginning in 2022, beset by many debilitating obligations including liabilities arising from the large-scale production and sale of opioid products. Among debtors' obligations was liability to individuals who had suffered various injuries or medical complications stemming from implantations of Endo's mesh products that were intended for use treating various gynecological conditions.

The debtors eventually obtained confirmation of a plan, pursuant to which a trust (the "**Mesh Trust**" or "**Trust**") was created to compensate claimants harmed by the company's

allegedly defective mesh products. The plan conferred broad discretion on the Trustee of the Mesh Trust to devise procedures for determining eligibility and for making distributions to eligible claimants. The trustee of the Mesh Trust (the "**Mesh Trustee**" or "**Trustee**") represents that the Trust is funded with $2 million plus a potential share of estate recoveries, if any, from insurers. No such insurance recoveries have yet reached the Mesh Trust.

The two plaintiffs in this case (the "**Plaintiffs**") are Australian women who are suing on behalf of themselves and (at least putatively) a larger group of Australian claimants (with Plaintiffs, the "**Australian Claimants**") who, through counsel, attempted to submit claims to receive compensation from the Trust. The Mesh Trustee deemed deficient and disallowed their claims submissions based at least in part on their failure to include a signed HIPAA release form as the Trustee's procedures required. The Mesh Trustee had previously informed counsel for the Australian Claimants that their claims would not be processed without the HIPAA release that the Trustee's procedures required, but the Australian Claimants did not provide HIPAA releases, contending that HIPAA has no extraterritorial effect and that they accordingly should not be required to provide signed HIPAA releases. Now pending before the Court is Plaintiffs' motion seeking a preliminary injunction (the "**Motion**") to preclude the Mesh Trust's trustee from commencing trust distributions before the Plaintiffs can fully contest the Trustee's disallowance of their claims.

Ultimately, the defendants prevail. The Trust documents confer broad discretion to the Trustee to devise and apply procedures for the submission and evaluation of claims, and the Trustee has consistently taken the position, including in a lengthy series of communications with counsel for the Australian Claimants, that HIPAA forms were required of all claimants who wished to be considered for compensation from the Trust. Further, the governing trust

documentation contains multiple provisions that explicitly and without exception require claimants to submit a HIPAA release, making the Trustee's position reasonable and tethered to the governing documents. It is true, as the Australian Claimants emphasize, that one of the Trust's documents lists requirements for claimants and qualifies the HIPAA release requirement by saying such a release is required "if applicable." The Australian Claimants insist the insertion of "if applicable" in one location among several means they cannot be required to submit HIPAA releases because, they further contend, HIPAA has no extraterritorial effect.

Notwithstanding their contentions, the Australian Claimants have *at best* identified a possible ambiguity in the trust documentation in the coexistence of the "if applicable" provision with the other provisions explicitly requiring all claimants to submit a HIPAA release; in fact, the Court perceives no ambiguity requiring recourse to extrinsic evidence. The "if applicable" clause does not override the other explicit provisions requiring HIPAA releases, and even the existence of possible ambiguity is not enough for the Australian Claimants to prevail. In fact, it favors the Mesh Trustee's position, because the Trust's governing documents generally provide broad discretion to the Mesh Trustee in the fulfillment of her duties to resolve claims and distribute trust proceeds in an efficient and cost-effective manner. The documents even provide the Mesh Trustee with the explicit power to request a HIPAA release from any claimant, which the Mesh Trustee did here as to the Australian Claimants.

Thus, Mesh Trustee acted within her reasoned judgment and authority – pursuant to both her explicit power to request HIPAA forms from claimants and her general powers to administer the Mesh Trust – in determining that requiring a HIPAA release from every claimant was in the best interest of the Mesh Trust and preservation of the funds therein, considering the potential for litigation over individual consent issues and possible claims of unauthorized release of

claimants' medical confidences. Further, the Mesh Trustee provided ample and repeated notice to counsel for the Australian Claimants that she would require the HIPAA release to consider their claims. Despite repeated warnings, the Australian Claimants did not submit signed HIPAA releases by the deadline set for curing deficient claims, nor at any time thereafter. The Mesh Trustee's subsequent disallowance of those claims for failure to meet the cure deadline was not an abuse of her discretion and was done with appropriate notice and in accordance with the procedures set forth in the agreements.

The Court takes no pleasure that the Australian Claimants, at least some of whom presumably suffered injuries and medical complications from their use of Endo products, will as a result be without recourse against the Mesh Trust, but they and their counsel had abundant and repeated notice that HIPAA releases were required. The Court cannot now absolve the Australian Claimants of the Trustee's reasoned determination of the consequences of their failure to submit proper claims including the HIPAA release as required. Any other result would impose unreasonable delay on the compensation of claimants who properly followed procedures that the Trustee established, and would add expense, delay, and uncertainty to a lengthy process that the Trustee is charged with bringing to a fair and efficient conclusion. Therefore, the Motion is denied.

## BACKGROUND

As briefly noted above, Endo was a major pharmaceutical company that filed for bankruptcy in August 2022, largely as a result of liabilities arising from governmental investigations and mass tort claims relating to the company's production and sale of opioids. *See Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International plc and its Affiliated Debtors* (the "**Plan**"), Case No. 22-22549, ECF No. 3849. On March 22, 2024, the

Court entered an order confirming Endo and its affiliates' Chapter 11 Plan, which became effective on April 23, 2024 (the "**Effective Date**"). *See* Confirmation Order, Case No. 22-22549, ECF No. 3960; *see also* Notice of Confirmation Order and Effective Date, Case No. 22-22549, ECF No. 4212. On the Effective Date, several trusts were formed to pay Endo's unsecured creditors, including the Mesh Trust, which was tasked with handling claims and providing distributions to thousands of women who suffered complications from the implantation of Endo's defective mesh products. *See* Plan § 6.3. Pursuant to the provisions of the Plan concerning the Mesh Trust, the Mesh Trust Agreement[2] (the "**Trust Agreement**") was executed to establish procedures governing the resolution of claims and distribution of trust assets. *See* Case No. 22-22549, ECF No. 4213, Ex. 1-C. One attachment to the Trust Agreement was the Scheduled Claims Process for Mesh Claims (the "**Schedule**"), which further outlined the means for evaluating and resolving mesh claims. *See* Case No. 22-22549, ECF No. 4213, Ex. 1-C, Ex. 1. Disagreement regarding the interpretation and application of these two documents is at the center of this dispute.

Prior to Endo's bankruptcy, the Australian Mesh Claimants filed the equivalent of a class action suit in the Federal Court of Australia seeking recompense for harm caused by Endo's defective mesh products. Motion ¶ 6-7. The Australian action was stayed due to Endo's bankruptcy, and the Australian Mesh Claimants actively participated in the bankruptcy case through counsel Howard P. Magaliff of RM3 Law, LLP ("**Mr. Magaliff**"). *Id.* ¶¶ 1, 11, 12 n.5; *see also* Notice of Appearance, Case No. 22-22549, ECF No. 1458. As a result of negotiations over the terms of the Trust Agreement and Schedule, Mr. Magaliff's firm advocated and secured the addition of the words "if applicable" to the end of one clause that required claimants to

---

[2] The Trust Agreement was executed on the Effective Date by the Mesh Trustee and U.S. Bank National Association, as the Delaware Mesh Trustee for the Mesh Trust.

provide a HIPAA release. *See* Motion ¶ 12 n.5; *see also* Schedule § 3.2.3. Plaintiffs explain that this was done in light of uncertainty regarding the applicability of HIPAA to foreign claimants and to prevent any prejudice to the Australian Claimants as compared to U.S. claimants. *See* Motion ¶ 12 n.5. However, this isolated wording change did not expressly override or even acknowledge other provisions – which were unaltered– within the Trust Agreement and claim submission form ("**Trust Submission Form**") [Case No. 22-22549, ECF No. 1458, Ex. 1-C, Ex. 2] that both explicitly require claimants to submit a HIPAA release, without exception. *Compare* Schedule § 3.2 ("[t]o establish an Allowed Mesh Claim . . . an Eligible Mesh Claimant must satisfy the following criteria: . . . Complete, sign and submit the HIPAA Release, ***if applicable***") (emphasis added) *with* Trust Agreement § 4.1(b) ("the Trust Submission Form shall include (i) a HIPAA release form") (emphasis omitted); Schedule § 2.1(a) (an allowed claim provides credible proof that satisfies the evidentiary criteria, which includes delivery of the Trust Submission Form with the HIPAA release and "all [other] exhibits thereto"); Trust Submission Form pt. III at 7 ("It is important . . . that you have *executed and submitted the HIPAA release form* attached hereto to ensure the Mesh Trustee can access and review the medical records that support your claim.").

Following their negotiations, the Australian Claimants (approximately 6,000 in number) were permitted to file a single consolidated proof of claim by an extended deadline of September 2, 2024, and to provide further supporting documents by October 7 and 9, 2024. Motion ¶ 14. Since just after the Plan's Effective Date, the record reflects a series of communications[3] between the Mesh Trustee, Mr. Magaliff, and related parties regarding the Australian Claimants' claims submissions, in which Mr. Magaliff objected to the large burden and cost of obtaining and

[3] The Court will not list or summarize every communication, but they can be found attached to the parties' pleadings and declarations.

reviewing his clients' medical records and asserting the inapplicability of HIPAA to his clients, while the Trustee insisted that the procedures of the Trust Agreement must be followed and that a HIPAA release form was required.

Specifically, on February 11, 2025, the Australian Mesh Claimants received notice from the Trustee that their claims were deficient and at risk of disallowance, with an excel sheet attached identifying each Australian Claimant's deficiencies. Motion ¶ 15; *see also* Letter from Mesh Trustee to Mr. Magaliff (Feb. 11, 2025) Motion, Ex. 4 at p. 3 (letter providing notice of deficiency); Opposition, ECF No. 5, Ex. 1, Ex. C (legend attached to excel sheet). Notably, the Trustee deemed the claim of every Australian Claimant to be deficient for failure to submit a signed HIPAA release form.

The Trust Agreement provides that mesh claimants who receive a notice of deficiency regarding their claim must cure those deficiencies within 30 days of notice, but the Australian Claimants were given an additional week through March 20, 2025, to provide all the necessary information. The day before this deadline (and so more than a month after the Trustee sent the deficiency notice again explaining that HIPAA releases were required), Mr. Magaliff emailed the Mesh Trustee to inform her that all deficiencies were cured except submission of the HIPAA form since "the Australian [C]laimants . . . are not subject to it and have no idea even what HIPAA [sic] is." Email from Mr. Magaliff to the Mesh Trustee (Mar. 19, 2025, 1:54 p.m.), Motion Ex. 5 at pg. 1. Minutes later, the Trustee replied, explaining that "the Trust has been very clear throughout that each and every document subject to a deficiency notice must be submitted by the deadline of March 20, 2025. Without a completed HIPAA [sic] form, the claims will be considered deficient and will be disallowed." Email from the Mesh Trustee to Mr. Magaliff

(Mar. 19, 2025, 2:20 p.m.), Motion, Ex. 5 at pg. 1. The Australian Mesh Claimants did not and still have not submitted HIPAA release forms.

The parties did not present evidence of subsequent activity during the next year. More than one year after Mr. Magaliff's eve-of-deadline email and the Trustee's response, on May 1, 2026, Mr. Magaliff inquired about the status of his clients' claims, to which the Mesh Trustee responded that the claims were disallowed for failure to submit a HIPAA form and that notice of such disallowance was not sent as it is not required by the Trust documents or the Plan. *See* Email Correspondences at Motion, Ex. 6. On June 2, 2026, the Plaintiffs commenced this adversary proceeding seeking a declaratory judgment establishing that "(i) the requirement of a HIPAA Release is not applicable to the Australian Mesh Claimants, and (ii) the Mesh Trustee's disallowance of any of the Australian Mesh Claimants' claims on the basis that a HIPAA Release was not provided is null and void, and of no effect." Motion ¶ 28; *see also* Complaint, ECF No. 1. On June 5, 2026, Plaintiffs filed the Motion [ECF No. 2] now before the Court seeking a preliminary injunction to enjoin the Mesh Trustee from making any distributions to the holders of allowed mesh claims pending the resolution of the complaint. The Trustee filed an objection (the "**Objection**") on behalf of the Mesh Trust [ECF No. 5] and Plaintiffs filed a reply (the "**Reply**") [ECF No. 9]. The Court heard oral argument on June 20, 2026 (the "**Hearing**"), and reserved decision. *See* Hearing Transcript, ECF No. 10.

At argument, the Mesh Trustee explained that the Trust is funded only with $2 million, although it may also eventually recover additional proceeds from insurance proceeds to fund supplemental distributions. *See* Hearing Transcript at pgs. 15, 42. The Trustee further explained that she wishes to make distributions to eligible claimants promptly and without further delay. *See id.* at pgs. 40-42.

## JURISDICTION

This Court has jurisdiction over this bankruptcy case and this adversary proceeding pursuant to 28 U.S.C. §§ 157(b), 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A) and (L) because it concerns matters relating to administration of the estate. This Court possesses the authority to enter a final judgment in a core proceeding "arising under title 11" consistent with Article III of the United States Constitution. *See Stern v. Marshall*, 564 U.S. 462, 474-75 (2011). Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## LEGAL STANDARD

Fed. R. Civ. P. 65, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7065, requires that the party seeking a preliminary injunction establish: (1) "irreparable harm" in the absence of the injunction; (2) "either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party"; and (3) that the preliminary injunction is in the "public interest." *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011); *see also New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015). Movant carries the burden of persuasion and must make a clear showing of entitlement to relief. *In re First Republic Grp. Realty, LLC.*, 421 B.R. 659, 677-78 (Bankr. S.D.N.Y. 2009).

## DISCUSSION

The Court will begin its analysis with the "likelihood of success on the merits" element of the preliminary injunction inquiry.

### I. Likelihood of Success on the Merits

To demonstrate a "likelihood of success," a plaintiff must show that it is more likely than not – or "the probability of his prevailing is better than fifty percent" – that it will succeed on the merits its claims. *Broker Genius, Inc. v. Volpone*, 313 F. Supp. 3d 484, 497 (S.D.N.Y. 2018) (quoting *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988)); *see Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011).

In support of the Motion, Plaintiffs argue that the Schedule stated that the form was only required "if applicable" – language Mr. Magaliff specifically negotiated – and that this provision should override any inconsistent provisions of the Trust Agreement and Trust Submission Form notwithstanding that those passages explicitly and without qualification require claimants to submit a HIPAA release. Motion ¶¶ 29-30. The Claimants maintain that the "if applicable" clause should govern based on the maxim that specific contractual language should control over more general language, and because, if the Trust documentation were read otherwise, the "if applicable" provision would allegedly be rendered meaningless. *Id.* Plaintiffs further contend that HIPAA is inapplicable to the Australian Claimants because HIPAA only applies to records maintained in the U.S. and the claimants' records were maintained in Australia, such that the HIPAA release form serves no purpose in relation to their claims. *Id.* ¶¶ 31-36. Plaintiffs also contend that collecting HIPAA releases from 6,000 claimants would be needlessly burdensome and prohibitively costly. *Id.* ¶¶ 38, 41; *see also* Email from Howard P. Magaliff (July 18, 2024, at 10:11 p.m.), Opposition, Ex. 1, Ex. B at 1 (alleging it would take up to a year and would cost over $12,775,000 to obtain and review the necessary records). Moreover, Plaintiffs characterize the Trustee's requirement as "elevat[ing] form over substance," as the Australian Claimants' medical information was already given to the Mesh Trustee by the Plaintiffs' Australian counsel.

Motion ¶ 38. As such, Plaintiffs argue that Trustee's disallowance of claims on the basis of failure to submit a pointless form should be declared null, void, and of no effect. *Id.* ¶¶ 38-39.

In response, the Mesh Trustee contends that the terms of the Trust Agreement that unambiguously and without exception require claimants to submit a HIPAA release should control, and that the one instance of the conditional and equivocal phrase "if applicable" is too vague and isolated to overcome the explicit requirements that otherwise pervade the agreement. Opposition at 18-19. The Trustee further contends that the Trust Agreement and Schedule were heavily negotiated and that Plaintiffs did not seek or obtain changes to the other provisions nor did they seek or obtain specific language regarding HIPAA's applicability or inapplicability to the Australian Claimants. *Id.* at 17-19, 21. More generally, the Mesh Trustee maintains (and the Australian Claimants appear not to dispute) that the disallowance of Plaintiffs' claims was done in accordance with the process outlined in the governing Trust documents. *Id.* at 16-17. Further, the Trustee maintains that the applicability of HIPAA to the Plaintiffs is irrelevant, as, even if HIPAA did not apply to their medical information, the HIPAA release forms provide the Trust with evidence of individualized consent for the review and verification of medical information. *Id.* at 19-20. The Mesh Trustee further argues that the Trust Agreement and Schedule grant her wide discretion in the fulfillment of her duties and that it was within her discretion, considering her fiduciary duties, to require HIPAA release forms to serve as proof of individual consent and prevent possible future litigation relating to the Mesh Trust's possession and use of claimant medical records. *Id.* The Trustee emphasizes (correctly) that she communicated her intention to enforce this requirement on multiple occasions, and she argues that Plaintiffs' failure to submit the HIPAA form by the cure deadline was equivalent to missing a bar date. *Id.* at 16-17, 21.

At argument during the Hearing, the Trustee represented that, due to the Mesh Trust's limited funding and the need for efficient and prompt trust administration for the benefit of eligible claimants, the Trustee was not willing to risk liability or time-consuming and expensive disputes as to whether she was legally authorized to review claimants' medical records when a HIPAA release would eliminate any possible questions or risks to the Trust. *See* Hearing Transcript at pgs. 38, 42, 47. Further, the Trustee emphasized that she would have accepted one HIPAA form on behalf of all Australian Claimants as long as the form attached a list of those claimants and conveyed counsel's authorized consent for the Trustee to possess and review those claimants' medical records. *See id.* at pg. 14. In fact, the HIPAA release form attached to the trust documents contained alternative signature lines either for the claimant or for counsel acting for claimants, suggesting that Mr. Magaliff could easily have submitted the required form on behalf of the claimants he purports to represent assuming he possesses their consent to act on their behalf. *See* Trust Submission Form, Ex. 3.

As further explained below, the Trust Agreement and Schedule, taken as a whole, are best read to unambiguously require a HIPAA release of all claimants, with some possible exception if HIPAA is not "applicable," but with the determination of whether such an exception is appropriate left within the Trustee's authority. The governing documents unambiguously confer broad discretion – including the explicit right to request a HIPAA release – upon the Mesh Trustee in the fulfillment of her duties relating to the process and ultimate decision regarding claims resolution. The Trustee here exercised her broad discretion and repeatedly communicated her reasonable determination to counsel for the Australian Claimants. The Trustee thus afforded claimants notice and an opportunity to cure the deficiency that the Trustee perceived by belatedly providing a release, and the Trustee only then disallowed the claims. This

position and course of action lies within the Trustee's authority, and compels the conclusion that the Plaintiffs have not shown a likelihood of success.

Delaware law governs the Trust Agreement and Schedule, and requires courts to construe contracts to give effect to all provisions, avoiding interpretations that render words meaningless, and interpreting contractual provisions consistent with the context and overall manifest purpose of the agreement. *See e.g., O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 287 (Del. 2001) ("Delaware courts have consistently held that an interpretation that gives effect to each term of an agreement is preferable to any interpretation that would result in a conclusion that some terms are uselessly repetitive."); *see also e.g., Cheseroni v. Nationwide Mut. Ins. Co.*, 402 A.2d 1215, 1217 (Del. Super. Ct. 1979), *aff'd,* 410 A.2d 1015 (Del. 1980) ("a single clause or paragraph of a contract cannot be read in isolation, but must be read in context'). The parties spill much ink on whether the documents contain an ambiguity about whether a HIPAA release is or is not always required, or, if not, about what the documents' unambiguous meaning is.

But not subject to dispute, the governing documents grant the Trustee broad discretion as to both the process relating to, and the ultimate decision with respect to, allowance or disallowance of mesh claims. For example, the Trustee has: "sole discretion to recognize" a claim as timely, Trust Agreement § 4.1(d); discretion regarding providing notices of deficiencies in claims, *id.* § 4.1(e); and discretion to implement further safeguards regarding confidential information, *id.* § 7.1(b). In fact, the Trust Agreement even explicitly authorizes the Mesh Trustee to "request a Mesh Claimant to execute a HIPAA Release." § 4.21(f). All these provisions support the Trustee's broad authority to establish procedures and to administer the Trust in the exercise of her fiduciary judgment and discretion.

In the face of the Trustee's broad authority, the Australian Claimants point only to one instance of the non-specific clause "if applicable" in one portion of the governing documents. Schedule § 3.2 ("[t]o establish an Allowed Mesh Claim . . . an Eligible Mesh Claimant must satisfy the following criteria: . . . Complete, sign and submit the HIPAA Release, ***if applicable***") (emphasis added). But nothing about this language says whether the HIPAA release requirement is or is not "applicable" to the Australian Claimants, and it does not even specify whether "applicable" refers solely to the extent of HIPAA's territorial reach, or whether it also extends to any determination of the Trustee that such a release is required. Moreover, other aspects of the controlling documents explicitly and without exception require claimants to submit a HIPAA release. *See* Trust Agreement § 4.1(b) ("the Trust Submission Form shall include (i) a HIPAA release form"); Schedule § 2.1(a) (an allowed claim includes submission of the Trust Submission Form and "all exhibits thereto" – including a HIPAA release); Trust Submission Form pt. III at 7 ("It is important . . . that you have *executed and submitted the HIPAA release form* attached hereto to ensure the Mesh Trustee can access and review the medical records that support your claim.").

Taking all relevant provisions into account, the governing documents are best read to unambiguously require the submission of a HIPAA release, at least unless the Trustee agrees otherwise. The one instance in which "if applicable" was inserted does not purport to limit or override the other unqualified passages requiring submission of a HIPAA form, nor does it expressly say that the Australian Claimants (whose lawyer negotiated for the words' insertion) would not be required to submit a HIPAA release. At best, there is some ambiguity as to whether the Australian Claimants were persons as to whom HIPAA was not "applicable" and, further, that as a result no HIPAA release was required. But a more likely correct unambiguous reading

is that the insertion, while not resolving the issue now before the Court, at least left open the possibility of further discussions during which the Australian Claimants could try to persuade the Trustee that a release was unnecessary and should not be required. This interpretation gives effect to all provisions and allows the contract to be read consistently. It is further supported by the circumstances surrounding the drafting – Plaintiffs were uncertain about the applicability of HIPAA to foreign claimants and to prevent any prejudice to the Australian Claimants as compared to U.S. claimants, the “if applicable” language was added to allow for a potential exception to the requirement in the future should the Mesh Trustee determine that a HIPAA form is not needed. *See* Motion ¶ 12 n.5.

This potential for an exception, of course, is not enough for the Australian Claimants to show a likelihood of success on the merits, or to prevail. They raised the issue and the Trustee did not waive the requirement of submitting a HIPAA release. That is consistent with what the Court believes is the best and only viable, unambiguous reading of the documents – namely, that a HIPAA release was required, except that the documents preserved the possibility of further discussion with representatives of the Australian Claimants as to whether the form might not be required, notwithstanding all the other provisions of the governing documents. Even if the Court were to find that a HIPAA release was not unambiguously required by the governing documents, the Trust Agreement explicitly authorizes the Mesh Trustee to “request a Mesh Claimant to execute a HIPAA Release.” § 4.2 (f). The Trustee reportedly told counsel for the Australian Claimants that HIPAA releases were required. And, as noted, the Trustee has broad discretion as to both the process relating to, and the ultimate decision with respect to, allowance or disallowance of mesh claims. *See, e.g.*, Trust Agreement §§ 4.1(d)-(e); 7.1(b). And here the Trustee clearly acted pursuant to and within the scope of this authorized discretion.

This conclusion is borne out by consideration of the Mesh Trustee's duties and the context in which this dispute arises. The Mesh Trustee owes fiduciary duties to the Mesh Trust and must fulfill her duties in an efficient and cost-effective manner. *See id.* §§ 3.1(a), 3.1(a)(viii), 6.2(c)(ii), 7.13. In doing so, she must act within the governing agreements to collect claimants' documents, evaluate their claims, and distribute the trust proceeds. Here, the Mesh Trustee set a claims submission deadline for the Australian Claimants on September 2, 2024, and allowed additional documents to be submitted on October 7 and 9, 2024. *See* Motion ¶ 14. After reviewing the submissions, the Trustee sent a deficiency notice pursuant to § 4.1(e) that allowed the Australian Claimants 30 days to correct their deficient claims submission, which unambiguously included the deficiency of failing to submit a HIPAA release. *See id.*, ex. 3 pg. 3-4. The Mesh Trustee explains that she required a HIPAA release because, in her reasoned judgment in the exercise of her fiduciary duties, the release would serve as evidence of individual consent and prevent future litigation for the Trust over these issues. *See* Objection at 20; Hearing Transcript at pgs. 38, 42, 47. The Australian Claimants submitted a number of other documents but again failed to submit a HIPAA release, and, as a result, their claims were disallowed.

The Trustee's deficiency notice to Plaintiffs created the equivalent of a bar date. *See, e.g.*, *In re Lehman Bros. Holdings Inc.*, 566 B.R. 353, 357-58, 366-67 (S.D.N.Y. 2017) (failure to adhere to claims procedures results in disallowance of claim akin to missing the bar date). Such bar dates, including in post-confirmation claims procedures, are routinely enforced to achieve the dual goals of finality and fairness. *See, e.g.*, *id.* Once these deficiencies were not cured, the Trustee disallowed the claims without notice as contemplated by the agreement. *See* Trust Agreement § 4.1(e) ("Unless such deficiencies are corrected within thirty (30) days of the Mesh

Trust providing notice, such Claim shall be deemed Disallowed for all purposes of the Mesh Trust.").

The Trustee has also provided a reasonable explanation for the approach she has taken. The Trustee explains that she required the HIPAA release of all claimants because of her concerns regarding proof of individual consent and the prevention of future privacy-related litigation that could deplete trust assets, which is a reasonable exercise of discretion for a trustee overseeing a large yet not lavishly funded unsecured creditors' trust who likely did not want to expend time, and thus trust money, analyzing medical privacy laws of the countries in which claimants lived. *See* Objection at 20 ("The Mesh Trustee made a fiduciary decision to ensure that every Mesh Claimant had provided consent to the Mesh Trust so that it could freely review provided information, collect additional medical information, and/or verify medical information provided by claimants. The Mesh Trust made the decision to require the form of HIPAA Release attached to the [Schedule] to ensure that claimants' medical privacy was respected."). This concern appears legitimate notwithstanding Plaintiffs' argument that HIPAA is "silent as to any extraterritorial reach and contains no provision purporting to regulate foreign healthcare providers or custodians of health information located abroad." Motion ¶ 34. The Court's non-exhaustive inquiry leaves it uncertain as to whether HIPAA does or does not apply to the Trustee's review (within the United States) of the foreign claimants' medical information, and HIPAA violations carry large penalties and heavy fines. Facing these circumstances, it was reasonable for a Trustee to require the form to try to avoid any possible liability by ensuring the Mesh Trust has proof of individual claimant consent to review and process claimant medical records.

Accordingly, the Plaintiffs have not met their burden to show a likelihood of success on the merits; to the contrary, the Mesh Trustee has shown that she is likely to prevail on the merits.

## I. Sufficiently Serious Question and Balance of Hardship

Movants may also be entitled to a preliminary injunction if they can establish sufficiently "serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *E.g.*, *Oneida Nation of New York*, 645 F.3d at 164. A "sufficiently serious" question merely requires the dispute asserted to be a fair legal basis for a lawsuit, which is a much lower-merits based standard than a "likelihood of success." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35-38 (2d Cir. 2010). However, the "overall burden" under the sufficiently serious question prong "is no lighter than [] under the 'likelihood of success' standard" because the movant must additionally demonstrate that the "balance of hardships tips *decidedly*" in its favor. *Id.* at 35. If the court finds a "sufficiently serious" question, then it "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Main St. Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*, 103 F. Supp. 3d 244, 262 (N.D.N.Y. 2015) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S 7, 24 (2008)). The party moving for a preliminary injunction "must establish that the 'balance of hardships tips in their favor regardless of the likelihood of success.'" *Main St.*, 103 F. Supp. 3d at 262 (quoting *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010)). In this context, "[t]he relevant harm is the harm that . . . occurs to the parties' legal interests" and "cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Salinger*, 607 F.3d at 81 (footnote omitted).

Plaintiffs argue that "[a]bsent an injunction, Plaintiffs, who represent the majority of the intended beneficiaries of the Mesh Trust, will permanently lose their ability to recover on claims once all available funds are distributed." Reply ¶ 22. In contrast, the Mesh Trustee argues that if an injunction is granted, the Mesh Trustee will have lost the benefit of all of its work to be ready to make distributions to eligible claimants (who had already endured a long wait for compensation), the Trust will incur substantial disruption and added administrative expense even though the Trust has presently received only $2 million to fund both its administrative expenses and distributions to claimants with allowed claims. Opposition ¶ 22; *see also* Hearing Transcript at pgs. 15, 42.

In the circumstances, the Court is persuaded that the balance of hardships tips in the Trustee's favor. Though the Court is not without sympathy for the Plaintiffs and their possible loss of any recovery, they are responsible for their own predicament, and the Trust, so long as it has only $2 million both for administration and for paying out claims, would be severely impacted by delay and by a Plaintiff-compelled round of delay and further administrative work that could have been avoided had the Plaintiffs followed the Trustee's repeated, clear instructions. Further, the concerns voiced by the Trustee about possible legal exposure to the Trust if it processed and possibly revealed medical information about the Australian Claimants without a documented consent from those individuals is serious and could grievously compromise the Trust.

The balance of harm calculus is not meaningfully impacted if one takes into account the possibility that the Trust could receive a large infusion of insurance proceeds, which the Trustee reports is a theoretical possibility but not something that can be counted on. *See* Hearing Transcript 15, 41-32. Such an infusion would give the Trustee additional resources which would

ease the harm of depletion of the Trust's scarce resources. At the same time, however, a significant infusion of funds could enable a future distribution to the Australian Claimants even if the Trust expended its current limited funding on already-allowed claims. It thus appears to the Court that the Australian Claimants cannot count on the availability of future funds in the event they keep litigating and prevail later, but nor can the Trustee count on such funds eliminating the serious risk to Trust viability caused by proceeding as the Australian Claimants proses.

Thus, the Australian Claimants have not established a "balance of harms" that tips "decidedly," or even at all, in their favor, even if one assumes the (not obvious) existence of serious questions going to the merits of the Australian Claimants' claims.

## II. Irreparable Harm

Turning back to the first factor, irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 80 (2d Cir. 2024) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). To establish irreparable harm, "the moving party must demonstrate that absent a preliminary injunction it will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (quoting *Faiveley Transp. Malmo AB*, 559 F.3d at 118) (internal quotation marks omitted). The injury must occur to the movant's legal interest(s) and be one that cannot be remedied by damages or permanent injunction post final adjudication. *Salinger*, 607 F.3d 81. Moreover, absent "extraordinary circumstances," injunctions are unavailable "[w]here there is an adequate remedy at law, such as an award of money damages." *State Farm Mut. Auto. Ins. Co.*, 120 F.4th at 80 (quoting *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005)). "A claim of irreparable harm is undercut by a party's

unreasonable delay in seeking injunctive relief." *In re First Republic Grp. Realty, LLC.*, 421 B.R. 659, 679 (Bankr. S.D.N.Y. 2009).

Here, Plaintiffs emphasize what appears to be a real risk – that if there is no injunction, the Trust will distribute all its funds to holders of allowed mesh claims, and no funds will be available to pay the Australian Claimants even if they eventually prevail in the litigation. That presents a real risk of "irreparable harm" because, even though a theoretical award of money damages may be available later, such an award would be meaningless if the Trust no longer has funds. And, as discussed above, the theoretical possibility of a future infusion of insurance proceeds is too speculative to protect the Australian Claimants against the possibility of holding an uncollectible claim.

The Court might conclude that this situation alone establishes the irreparable harm factor. However, the required harm must be to a legal interest, and Mesh Trustee has reasonably concluded that the Mesh Claimants are not eligible for distributions because they failed to file the required HIPAA release. Further undermining their possible entitlement, the Australian Claimants have exhibited unacceptable delay by waiting until the Trustee is essentially ready to make distributions, after sitting on their hands for 15 months after receiving notice that their claims were deficient and were subject to disallowance. Whatever counsel's thinking may have been, this delay was prejudicial to the Trustee, the Trust, the Trustee's duty to run an efficient and timely claim evaluation and payment process, and the entitlement of holders of allowed claims to be paid as a result of that process. The Mesh Trustee correctly observes that she "conducted an orderly and fair claims process over a period of almost two years." Objection at 2. If Plaintiffs believed that a requirement set by the Mesh Trustee was improper, then that time to make an

appropriate request of the Court was much, much earlier. This delay weighs heavily against finding that the potential distribution now would irreparably harm the Australian Claimants.

Thus, Plaintiffs have not demonstrated that they will be irreparably harmed from the denial of their Motion.

## III. Public Interest

Finally, as to the question of the public interest, "[i]n considering the public interest element for granting an injunction, the focus is generally on how the parties' specific actions would impact the public at large." *Roman Catholic Diocese of Syracuse, N.Y. v. LG 35 Doe* (*In re Roman Catholic Diocese of Syracuse, N.Y.*), 628 B.R. 571, 582 (Bankr. N.D.N.Y. 2021). The inquiry is to ensure that the proposed injunction "does not cause harm to the public interest." *Sec. & Exch. Comm'n v. Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012).

This prong strongly favors the Trustee. In bankruptcy cases, there is a public interest in ensuring that the rules are followed and applied equally and that parties have finality. *See First Fidelity Bank, N.A., N.J. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 840 (2d Cir. 1991) (allowing proof of claim to be filed anytime undermines the "the institutional means of ensuring the sound administration of the bankruptcy estate"); *see also* 9 Collier on Bankruptcy ¶ 3003.03[4] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) (claims bar date serves purpose of finality). The Mesh Trustee followed the procedures outlined in the negotiated Trust Agreement and Schedule and provided multiple instances of notice to the Australian Claimants of the requirements. The Plaintiffs were provided with explicit notice of the HIPAA release requirement and were afforded the opportunity to timely comply, yet chose not to submit a signed HIPAA release in the first instance and again when provided the opportunity to cure. Requiring the Mesh Trustee to forgive a claim deficiency for thousands of claimants and

conduct another claims review process when she is at the point of distributing proceeds would be patently unfair to the other claimants and contravene the public interest in having court-approved procedures followed and applied uniformly, with an eye to timely satisfaction of the entitlements of holders of allowed claims. Thus, the public interest is decidedly in favor of defendants.

The Court has considered but does not need to address or resolve a number of additional arguments, such as the Mesh Trustee's contention that the Australian Claimants may not file actions as a "class" due to language in the Trust Agreement explicitly requiring mesh claims to be brought individually, and because the Australian Claimants in fact previously withdrew a motion for class certification with prejudice, which the Trustee argues should have *res judicata* effect here. *See* Objection at 2 n.4, 14-16. The Australian Claimants attempt to work around this impediment by arguing that they are commonly represented individual claimants, although there are only two movants who purport to act on behalf of numerous others. The Motion's denial for the reasons stated above makes it unnecessary to sort through these somewhat convoluted questions.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiffs' motion for a preliminary injunction. No separate order is required to effectuate this ruling. The parties are to contact chambers to schedule a case conference.

So ordered.

Dated: New York, New York
August 19, 2026

*s/ David S. Jones*
Honorable David S. Jones
United States Bankruptcy Judge